**In the Matter of D. M. R., Appellant.**

**No. 10333.**

District of Columbia Court of Appeals.

Argued Feb. 8, 1977.

Decided April 26, 1977.

**236**

James G. Heldman, Washington, D. C., with whom John Perazich, Washington, D. C., was on the brief, for appellant.

Margaret L. Hines, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Deputy Corp. Counsel, Richard W. Barton, Deputy Corp. Counsel, and Edmund A. Matricardi, Jr., Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and NEBEKER, Associate Judges.

NEWMAN, Chief Judge:

Appellant, a juvenile, was adjudged delinquent after a trial on a petition alleging his involvement in offenses of premeditated murder, felony murder, armed robbery, armed rape, robbery and burglary. At a disposition hearing conducted before a judge other than the trial judge, he was committed to the Social Rehabilitation Administration for an indeterminate period not to exceed two years. He appeals asserting as error: (1) the insufficiency of the evidence to convict of premeditated murder, felony murder, armed rape and burglary; and (2) improper disposition procedures. Finding no merit to his first contention, we affirm his adjudication as delinquent. Finding his second contention to be meritorious, we vacate the disposition and remand for a new disposition.

I.

The facts, viewed in the light most favorable to the government [1], show that late one evening appellant and two friends decided to rob the murder victim, Ponder, and her friend, Fisher, as they were returning home from a local bar. They confronted the victims at gunpoint and took Fisher's wallet. When told that the victims had no money with them but had some at home, the victims were compelled to go to Ponder's apartment. One entered with Ponder to get the money, another stood watch, and appellant stayed with Fisher. At some point, Ponder recognized one of the perpetrators (Theodore) and told him so. She and Fisher were taken out of the building and while appellant guarded Fisher, Ponder was taken behind the building into a shed. Twice appellant went to the shed in a futile attempt to persuade Theodore to leave. There he saw Theodore raping Ponder. When Theodore announced his intention to kill Ponder and armed himself for that purpose, appellant made no protest nor did anything else to disassociate himself from the events. He remained at all times near the scene where Ponder was being raped and murdered. After the murder, he departed with Theodore and the third participant.

■ From this evidence it is clear that appellant voluntarily involved himself in the criminal activity. Notwithstanding the fact that he did not rape or shoot Ponder,

---

1. *Creek v. United States*, D.C.App., 324 A.2d 688 (1976).

he is still chargeable as an aider and abettor, and liable as a principal for the acts of the actual perpetrator if his conduct in any way furthered the common scheme to commit the crimes charged. *Creek v. United States*, D.C.App., 324 A.2d 688 (1976). His agreement to accompany his friends in pursuit of the unlawful activity, his assumption of the responsibility of standing guard by Fisher, and his voluntary act of remaining at the scene abetted the commission of the crimes.

■ We find ample evidence in the record to support the court's conclusion that appellant's conduct during the commission of the felonies was sufficiently culpable to infer criminal complicity. It does not support appellant's contention that he attempted to withdraw from the activity since nowhere is there any showing that he indicated a desire to disassociate himself from the others. His approval was evidenced through his active participation in the venture. *Creek v. United States, supra.*[2]

## II.

When the appellant came before the court for disposition hearing, he requested pursuant to Super.Ct.Juv.R. 25(b)[3] that the matter be certified to the judge who had conducted the trial. That judge was present for duty at the Superior Court although not then assigned to the Family Division thereof. Informed that the trial judge did not desire the case certified to

her, appellant requested the court to exercise its discretion under Super.Ct.Juv.R. 25(b) to conduct a *de novo* hearing. The court declined and proceeded to disposition.[4]

Under Juvenile Rule 25(b), in order for a judge to impose disposition in a case he did not try, the trial judge must be absent, dead, sick, or disabled. The trial judge in this case was available. She was contacted in her chambers and because she had no recollection of the case, declined to handle the sentencing. Appellee has urged that the judge's rotation from the Family Division is an absence within the meaning of Rule 25(b). We cannot agree.

■ Although we have found no cases construing this rule, the corresponding federal rule,[5] which is substantially identical to that here at issue, lends guidance to its interpretation. The federal rule has been construed by the Advisory Committee on Rules[6] to mean physically distant and was intended to cover those situations where the trial judge had left the area to return to his regular court in another district. Where the trial judge is available within a reasonable distance from the place of trial, the federal courts have held that it is appropriate to maintain continuity by having that judge conduct the sentencing. *United States v. Bowser*, 497 F.2d 1017 (4th Cir. 1974); *United States v. Bakewell*, 430 F.2d 721 (5th Cir. 1970).

We adopt the rationale of the federal courts. The obvious intent of this unambig-

---

2. The extent of appellant's participation is significantly different than in such cases as *Bailey v. United States*, 135 U.S.App.D.C. 95, 416 F.2d 1110 (1969), on which appellant relies.

3. Super.Ct.Juv.R. 25(b) provides:

   If by reason of absence, death, sickness or other disability the judge before whom the respondent had his factfinding hearing is unable to perform the duties to be performed by the Division after a finding of guilt or need for supervision, any other judge regularly sitting in or assigned to the Division may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the factfinding hearing or for any other reason, he may in his discretion grant a new factfinding hearing.

4. It is clear that the judge who imposed disposition did not have a transcript of the factfinding proceedings. Further, although the record on appeal does not contain the dispositional report prepared on appellant, counsel for appellant pointed out to the court during his attempt to obtain a *de novo* hearing that the report contained only one or two lines concerning the circumstances of the offense.

5. Fed.R.Crim.P. 25(b).

6. While Notes of the Advisory Committee on Rules which accompany proposed rules are not authoritative, they are somewhat analogous to a Congressional Committee Report in determining the intention of the framers of the rules. *United States v. Mihalopoulos*, 228 F.Supp. 994, 1002 (D.D.C.1964).

uous rule is to grant to a juvenile the benefit of having his case disposed of by the judge who heard the evidence. The safeguards inherent in the rule are necessary ingredients of the social welfare philosophy by which the Juvenile Act was promulgated and the court has a duty to assure that the child receives all benefits promised him under the statute and court rules. *Haziel v. United States*, 131 U.S.App.D.C. 298, 404 F.2d 1275 (1968).

█ Our conclusion is all the more compelled by reference to Super.Ct.Juv.R. 107(c) which specifically allows a successor judge to review a pretrial release order where the judge who entered it is unavailable or is no longer sitting in the Family Division.[7] It is obvious that where rotation from the Family Division is deemed a sufficient excuse for substituting a different judge for the trial judge it is quite explicitly set forth in the rules.[8]

█ By-passing the provisions of this rule, which has the force of law,[9] portends conflicting results and invites continuous review by this court. In such instance, our responsibility is to insure fair administration of justice by scrupulous adherence to the rules of court through the exercise of our supervisory powers. *Cf. Wise v. United States*, D.C.App., 293 A.2d 869 (1972). We choose to do so here because we deem it incompatible with the purposes of the Juvenile Act to allow the Superior Court to ignore its own rule which inures to the protection of its wards. Rules of procedure are not mere technicalities. Faithful observance of the standards insures the preservation of basic rights and legitimate expectations of juveniles. *Kass v. Baskin*, 82 U.S.App.D.C. 385, 164 F.2d 513 (1948).

Therefore, we direct the Superior Court to hereafter comply strictly with the provisions of Juvenile Rule 25(b) in all juvenile cases unless and until it is amended.

Accordingly, the adjudication of delinquency appealed from is affirmed. However, the disposition imposed is vacated and the case is remanded to the trial court for further proceedings, not inconsistent with this opinion.

*So Ordered.*

---

7. Super.Ct.Juv.R. 107(c) provides in part:

A juvenile who has been placed in detention, shelter care, or released under conditions pursuant to D.C.Code § 16–2312, may, at any time thereafter upon written application to the Family Division have the order reviewed by the judge who entered the order, and a decision rendered within five days of presentation to the judge who will state his reasons therefor in writing. If the judge who entered the above order is unavailable or is no longer *sitting in the* Family Division at the time of the application, the judge then sitting in New Referrals Court shall review the order and may modify or terminate it and state his reasons therefor in writing.

8. At oral argument, counsel for the government represented that the procedure utilized in this case is that regularly utilized in the Superior Court. It appears that unless the trial judge directs otherwise, the disposition is not conducted by the trial judge if that judge is no longer assigned to the Family Division. While we express no view on the desirability of such procedure, it is not sanctioned by the present rule. If change in such rule is to be made, it must be done pursuant to D.C.Code 1973, § 11–946, rather than by judicial decision.

9. *In Matter of C. A. P.*, D.C.App., 356 A.2d 335 (1976); *Campbell v. United States*, D.C.App., 295 A.2d 498 (1972).