Cynthia A. BOYD, Appellant,

v.

UNITED STATES, Appellee.

No. 86–1734.

District of Columbia Court of Appeals.

Argued Nov. 2, 1990.

Decided Jan. 7, 1991.

David Rosenthal, Washington, D.C., for appellant.

Richard L. Chamovitz, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Asst. U.S. Atty., were on the brief, Washington, D.C., for appellee.

Before ROGERS, Chief Judge, SCHWELB, Associate Judge, and PRYOR, Senior Judge.

ROGERS, Chief Judge:

Appellant Cynthia A. Boyd appeals from her conviction by a jury of possession of heroin, D.C.Code § 33–541 (1989 Repl.), on the principal ground that she was denied her constitutional right to testify. We hold that the right to testify is a fundamental constitutional right that can only be waived by the defendant, and that the trial judge erred in failing to hold a hearing to determine whether or not Boyd had waived her right to testify when she asserted that she had wanted to testify. Accordingly, the case is remanded to the trial court.

I

On the evening of her arrest, Boyd was spotted by Sergeant McNeely in the 600 block of Division Avenue in Washington, D.C., a high narcotics area. McNeely observed Boyd as she was approached by a man, as she spoke with him briefly, and as she and the man walked to the 5100 block of Fitch Avenue, where they entered a wooded area.[1]

Boyd emerged from the woods approximately one minute later and returned to the 600 block of Division Avenue. McNeely approached her and asked for her identification. As McNeely examined Boyd's driver's permit, Boyd reached into her handbag and removed two small plastic packets containing a white powder substance, and attempted to put them down the back of her blouse. Recognizing these packets to be similar to packets of heroin, McNeely grabbed Boyd's forearm in an attempt to recover the packets. However, Boyd flicked her wrist, tossing the packets over the side of the footbridge on which they stood. A struggle ensued with Boyd finally being subdued and arrested by McNeely and two other officers who had arrived to assist in the arrest.

McNeely subsequently searched the area underneath the footbridge. Although the small creek was filled with debris, such as bottle caps, newspapers and used syringes, he recovered two packets from the creek bed under the bridge which he was certain were the packets tossed by Boyd. McNeely explained that he could be certain of the packets' identity for several reasons. First, unlike the other refuse in the area, the recovered packets were clean and did not have a film of dirt or residue indicating they had been exposed to the elements. Second, the heroin in the recovered packets had not been diluted by water.[2] Third, the packets were the same size, shape and color as those tossed away by Boyd. Finally, nothing else in the creek area resembled the packets Boyd threw over the footbridge.

Boyd did not present a defense. After the jury returned a guilty verdict and was polled, Boyd made an outburst complaining that she had wanted to testify on her own behalf.[3] The judge directed the Marshal to escort Boyd out. Shortly thereafter, defense counsel approached the bench and told the trial judge that Boyd had wanted to testify, but that counsel had advised her it would not "be in her best interest." Defense counsel explained that he advised Boyd that she should not testify because she would have been impeached with prior convictions for possession of heroin and possession with intent to distribute. The trial judge concluded that this was a reasonable tactical decision of defense counsel.

At the sentencing hearing, Boyd renewed her complaint that she had not been allowed to testify at trial. She told the judge: "I wanted to go up there and talk for myself. [My lawyer] had me thinking I was going to testify for myself and then all of a sudden he cut it off, you know, and I

---

1. On cross-examination, McNeely conceded that he did not know what happened in the woods and he did not see appellant and the man exchange money or drugs.

2. A field test and chemical analysis indicated that the packets contained heroin.

3. Boyd stated:

   It's real f—— up. I don't give a f——. Real f—— up. That's why I told you I wanted to get up there and tell my side. I don't care, I don't care what happens today, it's real f—— up.

don't think that was right." The trial judge rejected Boyd's arguments without seeking further clarification from counsel, and sentenced Boyd to one year in jail.[4]

## II

Appellant Boyd contends that she was denied her constitutional right to testify, a fundamental right that she did not waive, having told her attorney that she wanted to testify. She maintains that this is clear from the record and that, therefore, her conviction must be reversed.

■ The United States Supreme Court has made clear that a criminal defendant enjoys a constitutional right to testify on her own behalf: "At this point in the development of our adversary system, it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49–52, 107 S.Ct. 2704, 2708–2709, 97 L.Ed.2d 37 (1987) (holding unconstitutional a state evidentiary rule forbidding defendants from offering hypnotically refreshed testimony). The right to testify has several constitutional sources. It is "one of the rights that 'are essential to due process of law in a fair adversary process.'" *Id.* at 51, 107 S.Ct. at 2709 (citation omitted). The right is therefore protected by the due process clauses of the Fifth and Fourteenth Amendments, which guarantee the defendant "an opportunity to be heard in his defense." *Id.* The right to testify can also be "found in the Compulsory Process Clause of the Sixth Amendment.... Logically included in the accused's right to call witnesses whose testimony is 'material and favorable to his defense' is a right to testify himself, should he decide it is in his favor to do so." *Id.* at 52, 107 S.Ct. at 2709 (citation omitted). Finally, the right to testify is a "necessary corollary to the Fifth Amendment's guarantee against compelled testimony," which ultimately protects the defendant's "choice of whether to testify in one's own defense." *Id.* at 52–53, 107 S.Ct. at 2709–2710 (citation omitted).

The government, conceding that the Supreme Court has resolved any question of the constitutional underpinnings of the defendant's right to testify, contends that the right is not absolute, however, and that defense counsel should be permitted to waive the client's right to testify.[5] In the government's view, the best approach is "to permit defense counsel, consistent with his or her obligation diligently and zealously to defend the client and to carry out the client's desires regarding the goals of litigation, to make the ultimate decision because defense counsel is in the best position to recognize and confront the tactical ramifications involved."[6] The government

---

**4.** After sentencing Boyd obtained new counsel and filed a motion to set aside the judgment or grant a new trial pursuant to D.C.Code § 23–110 (1981). The trial judge denied the motion without a hearing, reaffirming his view that defense counsel's decision not to call appellant as a witness was a reasonable tactical decision in light of her prior record and denied her motion without a hearing. Because Boyd did not appeal from the denial of her § 23–110 motion, our review is limited to the trial record. *Hall v. United States*, 559 A.2d 1321, 1322 (D.C.1989) (citing *In re E.G.C.*, 373 A.2d 903, 905 (D.C. 1977)).

**5.** The government argues that this issue is controlled by *United States v. Poe*, 122 U.S.App.D.C. 163, 352 F.2d 639 (1965), because the *Poe* court "held" that the ultimate decision to put the accused on the stand belongs to defense counsel. Although *Poe* is binding on this court, *M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971), *Poe* does not control here. The *Poe* court's statement that "[c]ounsel therefore remain free to keep defen-

dants from testifying whenever counsel see fit" was dictum, explaining that the "opinion is no broader than our decision" affirming the trial court's finding that the defendant's failure to be advised properly deprived him of a fair trial. *Poe, supra*, 352 F.2d at 640–41. In addition, *Poe* was decided before the Supreme Court made clear that the defendant's right to testify is of constitutional dimensions.

**6.** The government endorses Judge Thornberry's view that "the real question" in cases involving waiver of the right to testify "involves the proper allocation of authority between the attorney and his client," and upon analyzing "who is in a better position to judge trial strategy and who is in a better position to ensure the best interests of the defendant," concludes that "the decision whether to testify is properly allocated to the defendant's attorney and not to the defendant." *Wright v. Estelle*, 572 F.2d 1071, 1073 (5th Cir.) (en banc) (Thornberry, J., concurring), *cert. denied*, 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978).

acknowledges, however, that there is emerging case law to the contrary, requiring attorneys to abide by the defendant's ultimate decision whether to testify.[7] Further, the government argues that we need not decide whether an attorney may waive the client's right to testify because the record reveals that Boyd waived her right by not "affirmatively attempt[ing] to assert her right to testify" until after the jury had returned its verdict. We must therefore consider in what circumstances the right to testify may be waived, an issue of first impression for this court. *See Witherspoon v. United States*, 557 A.2d 587, 596–97 (D.C.1989) (Ferren, J., concurring).

■ It is, of course, beyond dispute that counsel for the accused has ultimate responsibility for many tactical trial decisions, such as which witnesses to call, which arguments to raise on appeal, *Jones v. Barnes, supra*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987, and whether and in what manner to cross-examine the government's witnesses. *See Brookhart v. Janis*, 384 U.S. 1, 8–9, 86 S.Ct. 1245, 1249, 16 L.Ed.2d 314 (1966) (Harlan, J., concurring) ("The decision, for example, whether or not to cross-examine a specific witness is, I think, very clearly one for counsel alone"). Counsel even controls tactical decisions over some constitutional rights. *See Estelle v. Williams*, 425 U.S. 501, 508 n. 3, 96 S.Ct. 1691, 1695 n. 3, 48 L.Ed.2d 126 (1976) (concerning a defendant's constitutional right to decide whether to wear prison garb at trial). But there are certain fundamental and personal constitutional rights which may only be waived by the defendant. *See Johnson v. United States*, 513 A.2d 798, 802 (D.C.1986). Thus, the defendant must decide whether to plead guilty, *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1968); *Carmichael v. United States*, 479 A.2d 325, 327 (D.C.1984), whether to ask for a jury trial, *Adams v. United States ex rel. McCann*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942); *Jackson v. United States*, 262 A.2d 106, 109 (D.C.1970), whether to appeal, *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Johnson, supra*, 513 A.2d at 802, and whether to forego the assistance of counsel, *Faretta v. California, supra*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Fowler v. United States*, 411 A.2d 618, 623 (D.C.1980). The defendant's decision over each of these fundamental rights will prevail, even if defense counsel disagrees.

The decision whether to testify can be the single most important factor in a criminal case. As the Supreme Court stated in *Rock v. Arkansas, supra*, "In fact, the most important witness for the defense in many criminal cases is the defendant himself." 483 U.S. at 52, 107 S.Ct. at 2709. In another context, the Court acknowledged specifically that "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green v. United States*, 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961) (plurality opinion) (right to allocution). The decision to testify thus is "crucial in governing the defendant's fate." *People v. Curtis*, 681 P.2d 504, 513 (Colo.1984) (en banc); *see* AMSTERDAM, TRIAL MANUAL FOR THE DEFENSE OF CRIMINAL CASES § 390 (3d ed. 1974). Although a defendant who chooses to testify may actually decrease his or her chance of acquittal, nonetheless, "[t]he wisdom or unwisdom of the defendant's choice does not diminish his right to make it." *Curtis, supra*, 681 P.2d at 513 (quoting *Wright v. Estelle, supra*, 572 F.2d

---

7. The government cites *United States v. Martinez*, 883 F.2d 750, 756 (9th Cir.1989); *United States v. Curtis*, 742 F.2d 1070, 1075–76 (7th Cir.1984), *cert. denied*, 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986); *United States ex rel. Wilcox v. Johnson*, 555 F.2d 115, 118–19 (3d Cir.1977). *Compare Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983) (defendant makes ultimate decision

whether to testify) (dictum) *with id.* at 755, 103 S.Ct. at 3315 (Blackmun, J., concurring) (neither a justice's "view nor the ABA's view of the ideal allocation of decisionmaking authority between client and attorney necessarily assumes constitutional status where counsel's performance is 'within the range of competence demanded of attorneys in criminal cases.' ").

at 1079 (Godbold, J., dissenting)). The defendant's

> desire to tell "his side" in a public forum may be of overriding importance to him. Indeed, in some circumstances the defendant, without regard to the risks, may wish to speak from the stand, over the head of judge and jury, to a larger audience. It is not for his attorney to muzzle him.

*Wright v. Estelle, supra,* 572 F.2d at 1080 (Godbold, J., dissenting).

Further, the right to testify advances important dignity interests which can only be served by honoring the defendant's decision. In *Rock v. Arkansas,* the Court indicated that "an accused's right to present his own version of events in his own words" is "[e]ven *more fundamental* to a personal defense than the right of self-representation" established in *Faretta, supra,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (emphasis added). The defendant's choice "must be honored out of that respect for the individual which is the lifeblood of the law." *Faretta, supra,* 422 U.S. at 834, 95 S.Ct. at 2541. Thus, the right to testify, like the right of self-representation, is rooted in

> the notion that when society, through its government, brings an individual before the court to face criminal charges, "that respect for the individual which is the lifeblood of the law" requires that the defendant be allowed, if he so desires, to speak directly to his accusers, and the court and jury that will decide his fate.

*United States v. Teague,* 908 F.2d 752, 759 (11th Cir.1990).

■ Accordingly, we hold that the defendant's right to testify in a criminal trial is a fundamental and personal right which can only be waived by the defendant. In so holding, we join the vast majority of other federal and state courts that have addressed the question. *See, e.g., Teague, supra* (11th Cir.); *Martinez, supra* note 7, 883 F.2d at 756 (9th Cir.); *United States v. Bernloehr,* 833 F.2d 749, 751 (8th Cir.1987); *United States v. Curtis,* 742 F.2d 1070, 7076 (7th Cir.1984), *cert. denied,* 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986);

*United States ex rel. Wilcox v. Johnson,* 555 F.2d at 118–19 (3d Cir.); *United States v. Dougherty,* 154 U.S.App.D.C. 76, 473 F.2d 1113, 1128 (1972); *State v. Neuman,* 371 S.E.2d 77, 81 (W.Va.1988); *Curtis, supra* (Colorado); *Culberson v. State,* 412 So.2d 1184, 1186 (Miss.1982); *State v. Rosillo,* 281 N.W.2d 877, 878–79 (Minn.1979); *Ingle v. State,* 92 Nev. 104, 546 P.2d 598 (1976); *State v. Noble,* 109 Ariz. 539, 514 P.2d 460 (1973); *Hughes v. State,* 513 P.2d 1115 (Alaska 1973); *see also Jones v. Barnes, supra,* 463 U.S. at 751, 103 S.Ct. at 3312 (the "accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to ... testify in his or her own behalf"); *Wainwright v. Sykes,* 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2510 n. 1, 53 L.Ed.2d 594 (1977) (Burger, C.J., concurring) ("[o]nly such basic decisions as whether to ... testify in one's own behalf are ultimately for the accused to make"); RULES OF PROFESSIONAL CONDUCT Rule 1.2(a) (1983) (D.C.C.A. Order of March 1, 1990) ("In a criminal case, the lawyer shall abide by the client's decision, after consultation the with lawyer, as to ... whether the client will testify"). *But see, e.g., State v. Albright,* 96 Wis.2d 122, 291 N.W.2d 487, 492 (concluding, pre–*Rock v. Arkansas,* that "counsel ... may waive the defendant's right to testify"), *cert. denied,* 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223.

### III

The question remains whether Boyd waived her right to testify. The government contends that by failing to assert her right before the jury returned the verdict the waiver can be inferred from her silence. In addressing this question we consider the requirements for an effective waiver and the responsibilities of the trial judge concerning a defendant's right to testify.

### A.

■ The general rule is that a personal and fundamental right will be deemed waived only if there is record evidence demonstrating "an intentional relinquishment or abandonment of a known right or

privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).[8] We have therefore often required the trial judge to engage the defendant in an on-the-record colloquy to ensure that the waiver of such rights is knowing and intelligent. Thus, for example, the judge must conduct an inquiry to determine whether a guilty plea is voluntary and intelligent. *Boykin v. Alabama, supra,* 395 U.S. 238 at 242, 89 S.Ct. 1709 at 1712; *Carmichael, supra,* 479 A.2d at 327. A similar colloquy must take place before a defendant waives the right to counsel, *Johnson v. Zerbst, supra,* 304 U.S. at 465, 58 S.Ct. at 1023; *Fowler, supra,* 411 A.2d at 623, the right to jury trial, *Adams v. United States ex rel. McCain,* 317 U.S. 269, 280, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942); *Jackson, supra,* 262 A.2d at 109, or the right to conflict-free counsel, *Douglas v. United States,* 488 A.2d 121, 138 (D.C.1985). In addition, the court is required, in circumstances analogous in some respects to the instant case, to conduct an on-the-record colloquy when a defendant complains about counsel's preparation. *Monroe v. United States,* 389 A.2d 811, 818–19 (D.C.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978); *Farrell v. United States,* 391 A.2d 755 (D.C.1978). Absent such record evidence of an express waiver, the defendant's rights will not be treated as waived.

There are well-documented benefits to the colloquy procedure. Since the rights at issue are fundamental to a fair trial, the courts have a "serious and weighty responsibility [to] determine[ ] whether there is an intelligent and competent waiver by the accused." *Johnson v. Zerbst, supra,* 304 U.S. at 495, 58 S.Ct. at 1006. In addition, advisement by the court on the record "preclude[s] postconviction disputes between defendant and counsel over the issue, and facilitate[s] appellate review." *Curtis, supra,* 681 P.2d at 515. In the situation involving complaints about trial counsel's preparation, moreover, the trial judge can address concerns at a time when problems can be rectified before the community's resources are expended on a trial.

Many of the courts to consider the problem of post-trial challenges based on denial of the right to testify have adopted the "colloquy" method: the trial judge must engage in an on-the-record discussion with the defendant to ensure that she has knowingly waived her right to testify. *See Curtis, supra,* 681 P.2d at 514; *State v. Neuman,* 371 S.E.2d 77 (W.Va.1988); *Culberson v. State,* 412 So.2d 1184, 1186–87 (Miss. 1982); *see also LaVigne v. State,* 788 P.2d 52, 55 (Alaska Ct.App.1990) (suggesting that a colloquy should be required); *Martinez, supra* note 7, 883 F.2d at 761–74 (Reinhardt, J., dissenting).[9] Under this ap-

---

**8.** In *Johnson v. Zerbst, supra,* the Court stated:

   Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty.... If the accused ... is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty.... If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed.... A judge of the United States—to whom a petition for habeas corpus is addressed—should be alert to examine the facts for himself when if true as alleged they make the trial absolutely void.

304 U.S. at 468–69, 58 S.Ct. at 1024–1025 (footnote omitted).

**9.** Most of the reported cases have involved postconviction collateral attacks. *See, e.g., Curtis,*

*supra,* 681 P.2d at 508, 509 (motion for new trial and motion for post-conviction relief). Curtis had not said anything during trial, but at the hearing on his motion for a new trial he claimed that he had not understood that he could override his trial lawyer's decision. *Id.* at 508. On appeal the court held the judge had a duty, when there is "ostensibly a waiver of this fundamental right [to testify] ..., to question the defendant to ascertain whether the defendant had a complete understanding of his right, including the right to override the contrary advice of his attorney." *Id.* at 508–09. Jones, whose appeal as consolidated with Curtis' appeal, testified during the hearing on his post-conviction motion that he had wanted to testify but found counsel's review of the disadvantages of his doing so "somehow threatening," and was under the impression that counsel was ordering him not to testify. (Jones also claimed that he had brought this dispute to the trial judge's attention, and the judge had advised him not to

proach, if the defense rests without calling the defendant, the trial judge, as a matter of routine, conducts an inquiry outside the jury's presence into the circumstances of the waiver. *Curtis, supra,* 681 P.2d at 514–15.

The colloquy approach for the right to testify has not, however, gone unchallenged.[10] The objections have led a second group of courts to adopt the "demand" rule urged upon us by the government: a defendant who fails to complain about the right to testify during trial is conclusively presumed to have waived that right. Courts using the demand rule will not entertain a post-trial challenge based on the right to testify. *See United States v. Edwards,* 897 F.2d 445, 447 (9th Cir.1990) (defendant's failure to advise judge, notwithstanding statement to attorney "I testify," after defense counsel decided not to call him, held to effectively waive his right to testify); *State v. Allie,* 147 Ariz. 320, 710 P.2d 430 (1985); *State v. McKinney,* 221 Kan. 691, 561 P.2d 432 (1977); *People v. Simmons,* 140 Mich.App. 681, 364 N.W.2d 783 (1985); *In re Mecier,* 143 Vt. 23, 460 A.2d 472 (1983); *State v. Albright,* 96 Wis.2d 122, 291 N.W.2d 487 (defendant failed to advise judge of desire to testify when attorney said he had decided not to call the defendant; no record indication of defendant's desire to testify), *cert. denied,* 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223 (1980). The demand rule is justified in two different ways. Either the right to testify is not viewed by these courts as fundamental, *see, e.g., State v. Albright, supra,* 96 Wis.2d at 129–30, 291 N.W.2d at 490–91 (pre–*Rock v. Arkansas* decision), or they presume that a defendant, "[e]ducated by television and past courtroom experience," has knowledge of the right to testify. *Martinez, supra* note 7, 883 F.2d at 761.[11]

A third group of courts has crafted a compromise between the two previous methods, the "post-trial challenge" approach: a trial judge need not *sua sponte* question the defendant during the trial, but the defendant is free to bring a post-conviction challenge based on a denial of the right to testify. To prevail in such a challenge, the defendant must demonstrate

---

testify as his attorney recommended, but he did not contest the judge's testimony denying the event had ever occurred). Jones admitted that in prior cases he had been informed of his constitutional right to testify. *Id.* at 509. The denial of his motion was affirmed by the court of appeals.

Boyd, by contrast, complained before sentencing that her right to testify had been violated. Nonetheless, Boyd's appeal raises the same issues as a post-conviction challenge. In both situations, the only remedy for a constitutional violation would be a new trial. Moreover, the government's fear that defendants will raise such claims "as an after-thought" after an unsuccessful trial applies just as much to collateral attacks as to Boyd's challenge.

**10.** One court has summarized seven objections to the colloquy requirement:

First, the right to testify is seen as the kind of right that must be asserted in order to be recognized. Second, it is important that the decision to testify be made at the time of trial and that the failure to testify not be raised as an afterthought after conviction. Third, by advising the defendant of his right *to* testify, the court could influence the defendant to waive his right *not to* testify, "thus threatening the exercise of this other, converse, constitutionally explicit and more fragile right." Fourth, a court so advising a defendant might

improperly intrude on the attorney-client relation, protected by the Sixth Amendment. Fifth, there is danger that the judge's admonition would introduce error into the trial. Sixth, it is hard to say when the judge should appropriately advise the defendant—the judge does not know the defendant is not testifying until the defense rests, not an opportune moment *to conduct a colloquy. Seventh, the* judge should not interfere with defense strategy.

*Martinez, supra* note 7, 883 F.2d at 760 (emphasis in original) (citations omitted).

**11.** The government argues for the "demand" rule by analogizing to two cases in which this court has placed limits on a defendant's right to self-representation: *Douglas, supra,* 488 A.2d at 143 (stating in dictum that trial court does not "necessarily abuse its discretion by refusing to interrupt a trial or grant a motion for continuance to facilitate a defendant's choice of counsel"); *Garris v. United States,* 465 A.2d 817, 820 (D.C.1983) (no abuse of discretion to deny midtrial motion to proceed pro se), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1013, 79 L.Ed.2d 243 (1984). These two cases are inapposite. Changing counsel in the middle of trial can impose great administrative burdens on a trial court. There are no analogous reasons why a defendant who decides to testify after a colloquy burdens the administration of justîce.

that he or she did not knowingly waive the right to testify at trial. *See, e.g., United States v. DiSalvo*, 726 F.Supp. 596 (E.D.Pa. 1989) (granting motion to vacate sentence after a post-conviction hearing); *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir.1987) (rejecting habeas corpus petition because the record "suggests that [the defendant] knew that, legally speaking, he could testify if he chose" and he "must claim" his right or it is deemed waived). The post-trial challenge approach is defended as less burdensome on trial judges, who would not be required routinely to advise a silent defendant of the right to testify, and as avoiding inappropriate judicial influence on the defendant. *See LaVigne v. Alaska, supra,* 788 P.2d at 55.

### B.

■ We conclude that the defendant's right to testify is one of those constitutional rights in which the *Johnson v. Zerbst* standard must apply in determining whether the defendant has waived that right. The Supreme Court has concluded that the right of the defendant to testify is "[e]ven more fundamental to a personal defense than the right of self-representation...." *Rock v. Arkansas, supra,* 483 U.S. at 52, 107 S.Ct. at 2709. The right is "so inherently personal and basic that the fundamental fairness of a criminal trial is called into question if [it is] surrendered by anyone other than the accused, or if the accused relinquishes [it] in any manner other than by voluntary, knowing and intentional waiver." *Curtis, supra,* 681 P.2d at 511.

We conclude further that the "demand rule" advocated by the government is fatally flawed. The demand rule ignores basic realities faced by the defendant and the courts. Many defendants are unaware that they have a constitutional right to testify which no one, not even their lawyer, may take away from them. In addition, the demand rule "requires the defendant to ignore the admonishments of counsel, interrupt the trial proceedings, and interject [herself], uninvited, into the fray." *Mar-*

*tinez, supra* note 7, 883 F.2d at 770 (Reinhardt, J., dissenting). Such a rule ignores the courtroom reality that "defendants who speak out of turn at their own trials are quickly reprimanded, and sometimes banned from the courtroom by the court," *Teague, supra,* at 759, as was Boyd. To the extent a defendant may have been "educated by television" to realize that he or she has such a right, as one opinion, on which the government relies, suggested, *see Martinez, supra* note 7, 883 F.2d at 761, the defendant still may not know that an objection must be made during trial or that right is forever lost. Further, in *Johnson v. Zerbst* the Court was unwilling to "presume acquiescence in the loss of fundamental rights." 304 U.S. at 464, 58 S.Ct. at 1023. *See* note 8, *supra.* In sum, the demand rule requires a defendant to assert a right of which the defendant may not be aware by objecting in a manner the defendant has been told is inappropriate. We decline to adopt a rule which places such burdens on the exercise of a fundamental constitutional right.

■ We need not now decide whether the trial judge had a sua sponte duty to conduct a colloquy, however. Once the trial judge became aware that Boyd was asserting that she had wanted to testify, the judge had a duty to determine whether she had made a knowing and intentional waiver. Boyd has made the broad claim on appeal that the record (including her outburst after the verdict) demonstrates that she was denied her right to testify. From our reading of the record it is unclear whether the trial judge was of the opinion that she had waived her right. It also is unclear from the record whether Boyd in fact waived her right. Accordingly, in this case we take a narrower approach than Boyd suggests. While we agree that she has raised a serious issue, going to the fundamental fairness of her trial, we cannot agree that the record clearly indicates that she did not waive the right, and we therefore conclude that a remand is necessary.[12] Further, in view of the nature of

---

12. The dissent argues that we are not free to order a remand in this case because Boyd failed

to "contend in her appeal ... that the judge erred by not holding a hearing when she

the defendant's right to testify, the trial judge's failure to hold a hearing to determine whether Boyd had waived her right to testify cannot be deemed harmless error. *See McKaskle v. Wiggins,* 465 U.S. 168, 176, 177–78 & n. 8, 104 S.Ct. 944, 950, 950–951 & n. 8, 79 L.Ed.2d 122 (1984) (self-representation; harmless error doctrine, designed to insure objectively correct trial outcomes, is inapplicable to those rights designed to serve individual dignity interests); *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967) ("constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error"); *Rosillo, supra,* 281 N.W.2d at 879 (stating that "the right to testify is such a basic and personal right that its infraction should not be treated as harmless error").

Accordingly, since the trial judge did not hold a hearing and the record does not otherwise indicate that Boyd made a knowing and voluntary waiver of her right to testify, the case must be remanded for a hearing to determine whether Boyd made a knowing and voluntary waiver of her right to testify. If the trial judge finds that Boyd did not make a knowing and intelligent waiver, then she is entitled to a new trial.[13]

We take this occasion, however, to advise the trial court and the Bar,[14] that while we do not today hold that the trial court has a *sua sponte* obligation to inquire of a non-testifying defendant before the defendant rests whether the defendant has waived the right to testify, it behooves the trial court to make such an on-the-record inquiry in order to avoid issues on appeal and collateral attacks.[15] *See LaVigne v. Alaska,*

brought her dissatisfaction to the judge's attention." Dissenting opinion at [2]. Contrary to the dissent's contention, however, Boyd's brief on appeal includes the complaint that

the trial court did not make an inquiry into whether [Boyd] wished to testify. In fact, the trial court seemed to be agreeing with trial counsel's refusal to call [Boyd] as a witness when it said "that's a decision that counsel must make."

The trial judge's statement referred to above occurred immediately after Boyd's outburst. Thus, Boyd's brief must fairly be read to include a claim that the trial judge did not make an appropriate inquiry after Boyd brought her concerns to the judge's attention. While Boyd's brief did not specifically request a remand, the court has never imposed an "artful pleading" rule for appellate briefs.

As to the dissent's complaint that Boyd "never appealed from the trial judge's denial of the § 23–110 motion," dissenting opinion at [2], we treat this appeal as if no collateral attack motion had been filed. To attach any more significance to her failure to appeal the denial of the § 23–110 motion would penalize her for an unsuccessful collateral attack. Given this court's holding that "§ 23–110 is not designed to be a substitute for direct review," *Head v. United States,* 489 A.2d 450, 451 (D.C.1985), it would be strange to treat as waived issues properly raised on direct appeal simply because they had also been raised in a previous collateral attack motion.

**13.** Given the disposition, we do not address appellant's claim that she was denied effective assistance of counsel.

**14.** *See Johnson, supra,* 513 A.2d at 803. Although the dissent cites cases not binding on

this court, dissenting opinion at [6], this court's supervisory power is long-settled. *See, e.g., Oliver v. United States,* 384 A.2d 642, 645 (D.C. 1978) ("in the exercise of our supervisory jurisdiction, we take this opportunity to set forth certain guidelines to assist the trial court in properly resolving such questions in the future"); *Reed v. United States,* 485 A.2d 613, 619 (D.C.1984) ("in the exercise of our supervisory jurisdiction, *Oliver, supra,* we hold that ... a prosecutor may not cross-examine a defendant about a prior conviction unless the prosecutor has a certificate under seal ... or the trial judge has ruled in advance...."); *In re D.M.R.,* 373 A.2d 235, 238 (D.C.1977) ("exercis[ing] supervisory powers" to require that trial courts "hereafter comply strictly with the provisions of Juvenile Rule 25(b)"); *see also Crowder v. United States,* 383 A.2d 336, 343 n. 14 (D.C.1978) (suggesting the language of a future supplement to a jury instruction); *United States v. Herrera–Figueroa,* 918 F.2d 1430 (9th Cir.1990) (announcing the new rule that an attorney must be present during a pre-sentence interview by probation officer, without deciding the Sixth Amendment issue).

**15.** The on-the-record colloquy might follow that suggested in *Curtis:*

A trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that waiver is voluntary, knowing and intentional by advising the defendant outside the presence of the jury that he [or she] has a right to testify, that if he [or she] wants to testify then no one can prevent him [or her] from doing so, that if he [or she] testifies the prosecution will be allowed to cross-examine him [or her], that if he [or she]

*supra,* 788 P.2d at 54–55 (the "only clear way to establish whether the defendant is waiving his right to counsel is to require trial judges to establish on the record that the defendant understands his right to testify and is waiving that right," since cases "clearly lack uniformity in the treatment of the defendant's right to testify"); *Culberson v. Mississippi, supra,* 412 So.2d at 1186 ("We suggest to the trial judges of the state that, in any case where a defendant does not testify, before the case is submitted to the jury, the defendant should be called before the court out of the presence of the jury, and advised of his right to testify."). This protective action—protective of the defendant's right, the government's interest in finality of convictions, and the public's interest in the orderly administration of justice, as well as counsel's interest in avoiding an ineffective assistance of counsel claim—avoids a host of problems. The record will be made in a timely manner, eliminating retrials and controversies on appeal and in collateral proceedings long after the trial is concluded, as experience in Colorado after *Curtis* indicates.[16]

The disadvantages of the colloquy requirement appear to be overstated. Although trial judges would be required to advise defendants who do not testify, the burden would be relatively minimal.[17] Indeed, by engaging in the colloquy, a trial judge would establish a record that would effectively settle the right-to-testify issues in the case, and thereby relieve the trial judge of extended post-conviction proceedings.[18] "[I]f the trial court does not establish on the record that the defendant understands and knowingly waives his right to testify, it is difficult to establish at the post-conviction relief hearing whether such a waiver occurred." *LaVigne, supra,* 788 P.2d at 55. Thus, many defendants would be able to raise colorable claims that their right to testify had been violated. Hence, "[a]s a practical matter, courts would be forced to inform defendants of the right [to testify] so as to avoid a post-hoc invalidation of the entire trial." *United States v. Edwards,* 897 F.2d 445, 446 (9th Cir.1990). Thus, the administrative burden of the colloquy requirement on the trial judge, as well as the appellate court, would in all likelihood be much less than the burden under the post-trial challenge method.[19] In

has been convicted of a felony the prosecutor will be entitled to ask him [or her] about it and thereby disclose it to the jury, and that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his [or her] credibility. In connection with the privilege against self-incrimination, the defendant should also be advised that he [or she] has a right not to testify and that if he [or she] does not testify then the jury can be instructed about that right.
681 P.2d at 514. *See Neuman, supra,* 371 S.E.2d at 82 (adopting the same language). The trial judge should make clear to the defendant that the decision is the defendant's alone, and not defense counsel's. *Curtis, supra,* 681 P.2d at 514. The defendant who is so questioned by the judge on the record would be deemed to have waived his or her constitutional right to testify. *See* note 16, *infra.*

**16.** Ever since *Curtis, supra,* 681 P.2d 504, was decided in 1984, the Colorado courts have functioned under a system requiring trial judges to inquire of defendants who do not testify. Post-conviction challenges in Colorado based on the right to testify have, to all appearances, been relatively easy to adjudicate. *See, e.g., People v. Woodard,* 782 P.2d 1212 (Colo.Ct.App.1989); *People v. Roelker,* 780 P.2d 17 (Colo.Ct.App.

1989); *People v. McMullen,* 738 P.2d 23 (Colo.Ct. App.1986); *People v. Fonda,* 712 P.2d 1067 (Colo.Ct.App.1985).

**17.** We are aware that at least one trial judge already conducts such a colloquy. *See (Joseph) Smith v. United States,* Nos. 87–556, 89–223 (King, W., J.).

**18.** In *(Ronald D.) Smith v. United States,* No. 88–1525, the trial judge conducted two evidentiary hearings in response to a collateral attack.

**19.** Moreover, the "seven reasons" to reject the colloquy method, *see* note 10, *supra,* are, upon examination, unpersuasive. First, the prophylactic colloquy rule eliminates any possibility that the right to testify will be asserted "as an afterthought after conviction." Thus, there is no unfairness to the government. Second, with appropriate instructions, the defendant can be advised of both the right to testify and the right not to testify, without influencing the decision one way or the other. Finally, although commentators have been concerned with the risk that a colloquy would intrude into the attorney-client relationship, *see, e.g., Bernloehr, supra,* 833 F.2d at 752 n. 3, other trial court waiver inquiries have not been viewed as creating appreciable problems. Judges routinely question

sum, the colloquy procedure would best serve all of the interests of all parties in the administration of justice.

*Remanded.*

SCHWELB, Associate Judge, dissenting:

With due respect to my colleagues, I do not think that this case presents the appropriate occasion to address profound constitutional issues regarding the precise character of a criminal defendant's right to testify or the desirability or lack thereof of the colloquy procedure. In my opinion, these questions are simply not before us, and fundamental canons of judicial restraint should caution us to defer their resolution to another day.

I

It is important at the outset to identify with precision the nature of this appeal. The critical fact in this regard, relegated by the majority to a footnote, is that Ms. Boyd filed an appeal from her conviction but did not appeal from the trial judge's denial, without a hearing, of her post-trial motion to vacate the judgment of conviction pursuant to D.C.Code § 23–110 (1989). Accordingly, as my colleagues recognize, maj. op. at 672 n. 4, our review is limited to the trial record. We cannot go beyond it and, significantly, we have not been asked to do so.

On appeal, Ms. Boyd argues that the trial record demonstrates that she was denied her constitutional right to testify.[1] She apparently bases this contention on her post-verdict complaint, renewed at the time of sentencing, that she had wanted to testify but that her attorney had not permitted her to do so. Her counsel, however, told the judge that he had advised Ms. Boyd not to testify, and not that he had prevented her from taking the stand. Ms. Boyd's obscenity-riddled outburst was not under oath and was not evidence. *See, e.g.,* DISTRICT OF COLUMBIA CRIMINAL JURY INSTRUCTIONS, No. 2.04 (3d ed.1978). The trial record therefore contains *no* evidence that Ms. Boyd was denied the right to testify, and it seems to me that her appeal must therefore fail.

In spite of the fact that the outburst was not evidence, I am inclined to agree with the majority that, upon hearing it, the trial judge might have done well to conduct a more comprehensive inquiry as to what had occurred between lawyer and client. The principals were present then, and recollections were presumably fresh. I am satisfied, in any event, that a hearing ought to have been held after Ms. Boyd had filed her § 23–110 motion. I cannot agree with the trial judge that the issue was resolved by trial counsel's indication that tactical considerations had led him to advise his client not to testify. The final decision was for Ms. Boyd to make, not for her attorney.

Ms. Boyd's problem in this court, however, is that she never appealed from the trial judge's denial of the § 23–110 motion without a hearing, nor did she contend in her appeal from the underlying conviction that the judge erred by not holding a hearing when she brought her dissatisfaction to the judge's attention.[2] Rather, she has

a defendant before accepting a guilty plea, *see Boykin v. Alabama, supra,* 395 U.S. at 242, 89 S.Ct. at 1712, without overly disrupting the attorney-client partnership. *See also Monroe, supra,* 389 A.2d at 818–19, and *Farrell, supra,* 391 A.2d at 755 (requiring inquiry when defendant alleges ineffective assistance of counsel). No basis has been put forward to suspect any greater intrusion with an inquiry into the waiver of the right to testify. These are the three most significant objections to the colloquy requirement. For a refutation of the other four "reasons," see *Martinez, supra* note 7, 883 F.2d at 766–67 (Reinhardt, J., dissenting).

1. She also contends, on the basis of the trial record alone, that she did not receive the effective assistance of counsel.

2. It is true, as the majority indicates, maj.op. at 677 n. 12, that Ms. Boyd's appellate brief contains the following statement at page 5: "the trial court did not make an inquiry into whether the Appellant wished to testify." Nowhere in her brief or in her notice of appeal, however, does she allege that the failure to make such an inquiry was error, as she was required to do under our Rules. See D.C.App.R. 28(a)(3), (5) & (6). The pertinent argument heading in her brief is as follows:

predicated her appeal entirely on the notion that no additional evidence is required, because the trial record demonstrates that she has been denied her rights. In fact, the record proves nothing of the kind. If Ms. Boyd's appellate counsel thought that the judge's error consisted of failure to hold a hearing following her courtroom outburst, he should have so argued. Since he did not, and since he filed no appeal on her behalf from the denial without a hearing of the § 23–110 motion, there is simply no claim before us that Judge Moore should have held a hearing or conducted any inquiry beyond the one he made. Under these circumstances, I do not think that we may or should recast Ms. Boyd's appeal for her.

One might well conclude that Ms. Boyd had a far more promising appeal from the denial of her § 23–110 motion than from her original conviction.[3] At least from my vantage point, it could not have been less promising. If she had indicated in any reasonable way a disposition to appeal from the judge's failure to hold a hearing, either at trial or thereafter, then it would be appropriate to remand the case with directions to hold that hearing now. Since she has never complained about the lack of a hearing or the insufficiency of the trial record, however, I think my colleagues are deciding an issue which has not been presented to us.[4]

Assuming, *arguendo*, that it was "plain error" for the judge not to hold a hearing, or a more extensive one, at the time of Ms. Boyd's outburst, we cannot correct even "plain error" if there is no appeal from it. It seems to me that the majority is treating the case as though Ms. Boyd had appealed from the denial of her § 23–110 motion, or had based her appeal from her conviction on the judge's failure to hold a sufficient hearing. Since she has done neither, I

The defendant had a right to testify in her own behalf and her trial counsel's decision to ignore his client's request is a violation of her constitutional rights.

Appellant's brief at (i). The brief goes on to claim that *"[t]he record is clear* from the two transcript portions cited above and the Affidavit of the Appellant that the Appellant wished to testify and was denied that right." *Id.* at 4. (Emphasis added). Finally, Ms. Boyd's prayer for relief is that "[t]he judgment of the lower court should be reversed because the Appellant was not permitted to testify on her own behalf ..." *Id.* at 8. Ms. Boyd simply did not allege the error which my colleagues have found or request the relief which they have awarded her.

The majority also views Ms. Boyd's failure to appeal from the denial of her § 23–110 motion as irrelevant. I suggest, on the contrary, that this failure casts a revealing light on the proper construction of her arguments in her appeal from her conviction. If she were contending that an additional hearing was necessary, this could be simply accomplished by asking this court to set aside the denial, without a hearing, of her post-trial motion. Ms. Boyd's failure to appeal from the order denying her § 23–110 motion confirms what is evident from her brief-namely, that she never intended to present to us for review the judge's failure to hold a hearing.

In light of these considerations, I cannot agree with the majority's perception that Ms. Boyd's brief "must fairly be read to include a claim that the trial judge did not make an appropriate inquiry after [she] brought her concerns to the judge's attention." *See In re Texas Mortgage Services Corp.*, 761 F.2d 1068, 1073–74 (5th Cir.1985) (failure specifically to raise or argue issue whether trial court should have conducted *de novo* review of bankruptcy court's finding of fact waived the point; contrary holding would be "patently unfair" since adversary was not apprised that issue was being contested); *Christoffel v. United States*, 88 U.S.App.D.C. 1, 10, 190 F.2d 585, 594 (1950) (per curiam) ("dispensatory discretion" to consider contentions where counsel failed to comply with appellate court's procedural requirements should be exercised sparingly). The government likewise did not understand Ms. Boyd to be making the supposed contentions on which the majority decision is based, and did not respond to them in its brief or, to any appreciable extent if at all, at argument. It is unfair, in my opinion, to rule against a party on a rationale to which that party never had any occasion or reason to respond.

3. That motion was accompanied by an affidavit from Ms. Boyd to the effect that the trial court had prevented her from testifying. This affidavit would have been properly before us if Ms. Boyd had appealed from the denial of her post-trial motion, but is not properly before us now.

4. I do not think that a remand with directions to conduct a further hearing is a "lesser included" remedy implicitly contained within Ms. Boyd's demand for outright reversal. I so conclude because her appeal is based on a trial record devoid of competent evidence supporting her claim. The relief ordered by the majority requires an expansion of the record, which seems to me to be a horse of an entirely different color.

cannot agree with the majority's disposition of this appeal.

## II

Even if the question whether the trial judge should be required to hold a further hearing were properly before us—and I do not think it is—then I suggest that this is hardly the case for broad-ranging advice to trial judges and lawyers about the desirability of a colloquy between the judge and the defendant regarding the latter's right to testify.

Neither in her brief, nor in the oral argument which the court ordered *sua sponte* after the case had been submitted, did Ms. Boyd suggest that any requirement of such a colloquy be generally adopted. In fact, defense counsel stated that no such colloquy was constitutionally required in the routine case. The government did discuss the colloquy procedure in its brief, but was not placed on notice that we were considering the adoption of a mandatory rule that a colloquy of the kind described by the majority be conducted in all cases.[5] The initiative for this substantial departure from current practice in the Superior Court comes entirely from the majority. I do not think it wise for a division of this court to be effecting procedural reforms in this manner, especially without any pragmatic demonstration of need and without any input from the judges of the Superior Court, who would surely have an "on the scene" sense of the practicality and desirability (or lack thereof) of the new proposed procedure.

Assuming, *arguendo*, that a remand is proper, all that this court needs to do is to explain that the ultimate decision whether to testify is the client's (not the attorney's, as the trial judge apparently thought) and to remand for an evidentiary hearing to determine whether Ms. Boyd was in fact denied her right to testify. Nothing more is required to dispose of this case.

My colleagues, however, have chosen to "advise the trial court and the Bar" that it "behooves" the trial court to follow the colloquy procedure. Maj. op. at 678. "It is well settled that judicial tribunals do not have authority to issue advisory opinions unless that authority has been granted under a specific constitutional or legislative provision." *Smith v. Smith*, 310 A.2d 229, 231 (D.C.1973) (citation omitted). A question which depends on contingencies which may not come about is not ripe for judicial resolution. *Id.* An issue is justiciable only "when the parties' rights may be immediately affected by ... a judicial decision [resolving it]." *Id.* Whether we do or do not adopt or encourage the use of the colloquy rule will make no difference to the parties to this controversy.

"The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, *or to declare principles or rules of law which cannot affect the matter in issue in the case before it.*" *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895) (emphasis added); *accord, Local No. 8–6, Oil, Chemical and Atomic Workers Int'l Union v. Missouri*, 361 U.S. 363, 367–68, 80 S.Ct. 391, 394, 4 L.Ed.2d 373 (1960) ("[t]o express an opinion upon the merits of the appellants' contentions would be to ignore this basic limitation [articulated in *Mills* ] upon the duty and function of the Court, and to disregard principles of judicial administration long established and repeatedly followed"); *Smith, supra,* 310 A.2d 231. As the court concisely put in *Younger v. Smith*, 30 Cal.App.3d 138, 153, 106 Cal.Rptr. 225, 235 (1973), "courts should not decide more than the occasion demands." *See also Johnson v. Morris*, 87 Wash.2d 922, 929–930, 557 P.2d 1299, 1305 (1976) (en banc):

As a general rule, this court will decide only such questions as are necessary for a determination of the case presented for

---

**5.** Although my colleagues have not formally adopted such a requirement, most trial judges can be expected to take to heart an appellate declaration that it "behooves" them to follow the colloquy procedure, maj.op. at 678, and that this procedure "would best serve all of the interests of all parties in the administration of justice." *Id.* at 679.

consideration, and will not render decisions in advance of such necessity, particularly when the question is a constitutional one,[6] or involves the construction of a statute. *See generally*, 21 C.J.S. *Courts* § 182 (1940).

My colleagues rely on this court's "supervisory power" to justify their detour into the dread domain of dictum and the provision of "advice" to the trial court and the Bar. Maj. op. at 678. I cannot agree that this is an appropriate exercise of our supervisory authority. The Supreme Court has warned that the supervisory power must be applied with caution. *See, e.g., United States v. Payner*, 447 U.S. 727, 735, 100 S.Ct. 2439, 2446, 65 L.Ed.2d 468 (1980). If restraint is not exercised, then a power not dependent on any provision in the Constitution or in applicable statutes can become an open-ended vehicle for converting the views of individual judges into the law of the jurisdiction.

"Guided by considerations of justice, ... and in the exercise of supervisory powers, federal courts may, *within limits*, formulate procedural rules not specifically required by the Constitution or the Congress." *United States v. Hasting*, 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983) (emphasis added). They have authority to do so to implement a remedy for violation of recognized rights, to preserve judicial integrity, and to provide a remedy for illegal conduct. *Id.* None of these considerations is implicated here. The supervisory power does not provide courts with a "roving commission" to right wrongs, *United States v. Jacobs*, 547 F.2d 772, 777 (2d Cir.1976); *see also United States v. Stanford*, 589 F.2d 285, 300 (7th Cir.1978), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979), or, in my judgment, to dispense with "principles of judicial administration long established and repeatedly followed." *Local No. 8–6, supra*, 361 U.S. at 367–68, 80 S.Ct. at 394.

My colleagues cite a number of cases, maj.op. at 678–679 n. 14, in which this court has exercised its supervisory authority. In the earliest of them, *In re D.M.R.*, 373 A.2d 235, 238 (D.C.1977), we simply directed the trial court to comply with its own rules; the invocation of the supervisory power was, in my view, more or less superfluous. In *Oliver v. United States*, 384 A.2d 642, 645 (D.C.1978) and *Reed v. United States*, 485 A.2d 613, 619 (D.C. 1984), both dealing with procedural issues regarding the use of impeachable convictions, the court went further and, after holding that the matter had been handled in the wrong way, explained what it thought a correct procedure would be. Although these and other decisions do not discuss any limiting prudential principle regarding the circumstances under which exercise of the supervisory power is deemed appropriate, the rules adopted in them are at least more closely related to the issue presented by the appellants than is true in the present case.[7]

Here, as we have seen, the defendant has not complained about the procedure which the judge employed. Rather, she claims that she is entitled to reversal on the record as it exists under the procedure which the judge did utilize. Finally, my colleagues say, maj.op. at 678–679, that they are *not* holding that the trial court has a *sua sponte* obligation to utilize the colloquy procedure, and I simply cannot believe that the supervisory power exists to allow us to give advice to trial judges and lawyers by way of dictum.

---

6. For a discussion of this court's extreme reluctance to address constitutional questions until we have to, *see Olevsky v. District of Columbia*, 548 A.2d 78, 81 (D.C.1988). *See also Allen–Bradley Local, etc. v. Wisconsin Employment Relations Bd.*, 315 U.S. 740, 746, 62 S.Ct. 820, 824, 86 L.Ed. 1154 (1942) ("Constitutional questions are not to be dealt with abstractly.... They will not be anticipated but will be dealt with only as they are appropriately raised upon a record before us.")

7. These distinctions are concededly shadowy, and the federal precedents are persuasive authority but no more than that. It may behoove this court to articulate, preferably en banc, on an appropriate record presented by parties who have contested the question, the proper prudential limits to the exercise of its supervisory authority. *Compare In re F.G.*, 576 A.2d 724, 725 n. 1 (D.C.1990) (en banc) *with* the dissenting opinion, *id.* at 730.

Given the authorities counselling restraint and my adherence to a limited view of the judicial function, I cannot agree that this case presents an appropriate vehicle for an evaluation of the pros and cons of the colloquy rule or for the selection of the pros as more persuasive than the cons. If we were to hold, on a record in which the question was properly raised and reached, that the colloquy procedure is constitutionally required, that would of course be a different matter. In my opinion, however, this is not the situation here, and we should confine ourselves to the issues which we must resolve.

I would affirm the judgment.[8]

---

**8.** Ms. Boyd also contends that she was denied the effective assistance of counsel. She failed, however, to appeal from the order denying her § 23–110 motion, and the trial record is palpably insufficient to demonstrate either deficient performance or prejudice within the meaning of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See, e.g., Simpson v. United States,* 576 A.2d 1336, 1338–39 (D.C.

1990); *Mack v. United States,* 570 A.2d 777, 785 (D.C.1990).