Nathan O. BOWMAN, Jr., Appellant,

v.

UNITED STATES, Appellee.

Nos. 88–CF–835, 91–CO–1488.

District of Columbia Court of Appeals.

Argued April 20, 1994.

Decided Dec. 30, 1994.

Frances M. D'Antuono, appointed by the court, for appellant.

Douglas F. Gansler, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Roy W. McLeese, III, David Schertler, and Carolyn K. Kolben, Asst. U.S. Attys., were on brief, for appellee.

Before WAGNER, Chief Judge,[*] and TERRY and SCHWELB, Associate Judges.

TERRY, Associate Judge:

Appellant appeals from his conviction of burglary in the first degree [1] and destruction of property [2] and from the denial of a motion to vacate his sentence. He argues that there was insufficient evidence to convict him of burglary; that he was erroneously barred from presenting the testimony of certain witnesses; that the court should have given a special unanimity instruction; that the prosecutor made improper comments in his closing argument; and finally, that he was denied the effective assistance of counsel at trial. We affirm both the judgment of conviction and the denial of the motion to vacate the sentence.

I

At approximately 11:00 p.m. on Monday, November 23, 1987, Paula Shaw Bowman, appellant's estranged wife,[3] was in her home, watching a football game on television with her thirteen-year-old daughter Pamela, her two-year-old son Paul, and her friend Edward Cosey, a Metropolitan Police officer, when appellant appeared at her door. Mrs. Bowman told appellant that she would not let him in and reminded him that he was supposed to stay away from her house.[4] Appellant began pounding on the door, swearing and telling Mrs. Bowman that he was coming in regardless of her wishes.

Worried and frightened, Mrs. Bowman told her daughter Pamela to call the police. When Pamela reported that the telephone line was dead,[5] Mrs. Bowman told her to start banging on the wall and also began to

---

[*] Judge Wagner was an Associate Judge of the court at the time of argument. Her status changed to Chief Judge on June 14, 1994.

1. D.C.Code § 22–1801(a) (1989).

2. D.C.Code § 22–403 (1989). Appellant was also charged with obstruction of justice, but the jury could not reach a verdict on that count of the indictment, and as to it the court declared a mistrial. The charge was eventually dismissed.

3. Mrs. Bowman sued for divorce in January 1987, but the final divorce decree was not entered until December 1987.

4. At that time there was a civil protection order in effect which barred appellant from coming near his estranged wife, although it appears that both she and appellant frequently ignored the order.

5. The police later discovered that the telephone wires leading into the house had been cut.

pound on the wall herself. This was a signal to Faye Diggs Wade—Mrs. Bowman's mother, who lived in an attached row house next door—that there was trouble and that she should call the police. Hearing the pounding, appellant yelled through the door, "Y'all better stop knocking on that goddam wall because if anybody comes out of that house ... then they gonna get hurt too, so y'all better stop knocking on that goddam wall."

Appellant then climbed up on the front porch railing, kicked in the living room window, and "rolled through it at the same time" into the house. Upon seeing Officer Cosey, who was off duty and therefore not in uniform, appellant twice asked, "Who is this mother-fucker?" Mrs. Bowman told Cosey, "You don't have to answer. That's none of his business." In response, appellant pushed Mrs. Bowman aside and asked Cosey directly, "Now what are you going to do, mother-fucker?" Cosey and appellant scuffled for a moment, but Cosey soon gained the upper hand, and the fight stopped.

Appellant then went back outside after picking up a beer bottle, taking Mrs. Bowman's keys and telling her that she should meet him at his mother's house in ten minutes. If she did not, appellant warned, she was "going to get hurt." Appellant also said to Officer Cosey, "If I find out who you are, you [are] going to get hurt too." As appellant left the house, he encountered Mrs. Wade on the porch. With the sound of police sirens drawing nearer, appellant told her, "If it was you that called the police, you're dead too." Appellant then fled on foot and was arrested on a warrant some time later.

The government presented the testimony of five witnesses, four of whom were present when appellant broke into the house: Mrs. Bowman, her daughter Pamela, Officer Cosey, and Mrs. Wade. Appellant presented no defense. The jury found appellant guilty of burglary and destruction of property. After he was sentenced and noted an appeal, he

filed a motion under D.C.Code § 23–110 (1989) to vacate his conviction on the ground that his trial counsel had rendered ineffective assistance. After a hearing, the trial court denied the motion, orally stating its findings of fact and conclusions of law. Appellant noted another appeal, which was consolidated with the appeal from his conviction.

## II

To obtain a conviction under our burglary statute, the government must prove "that the defendant entered the premises having already formed an intent to commit a crime therein." [6] *Warrick v. United States,* 528 A.2d 438, 442 (D.C.1987) (footnote omitted). Such intent is rarely capable of direct proof. "The requisite intent ... is a state of mind particular to the accused, and unless such intent is admitted, it must be shown by circumstantial evidence." *Massey v. United States,* 320 A.2d 296, 299 (D.C.1974). Thus unauthorized presence, by itself, is not sufficient to prove a burglary; the government must also show "other circumstances" that "might lead reasonable people, based upon their common experience, to conclude beyond a reasonable doubt that appellant intended to commit some crime upon the premises." *Shelton v. United States,* 505 A.2d 767, 770 (D.C.1986) (footnote omitted).

The indictment in this case alleged that appellant entered the dwelling of Paula Shaw Bowman "with intent to commit an assault." In *Warrick, supra,* we reversed a conviction of armed first-degree burglary with intent to commit an assault because the government established only that the defendant had entered a home armed with a dangerous weapon, a showing that, without more, was insufficient to support a burglary conviction. Citing *Warrick,* appellant argues that there was no evidence to permit the jury to infer that he intended to commit an assault.[7] At most, he asserts, the evidence

---

6. D.C.Code § 22–1801(a) provides, in pertinent part, that anyone who enters an occupied dwelling "with intent to ... commit any criminal offense" is guilty of first-degree burglary.

7. This argument is consistent with appellant's strategy at trial. For example, in closing argument defense counsel said:

> This is a case where Mr. Bowman had no right to go into Mrs. Bowman's home. He went in without her permission, granted. He made an unlawful entry, but the Government did not

suggests a "pattern of verbal harassment only, with no evidence of prior assaults or intent to assault upon entering [the] premises."

We cannot agree. First of all, the fact that appellant actually committed an assault very soon after he was inside the house is strong circumstantial evidence that he intended to commit an assault at the time he entered. *Lee v. United States,* 37 App.D.C. 442, 446 (1911) (when defendant was charged with housebreaking with intent to commit larceny, "the proof of this larceny was the best evidence that his unlawful entry of the house was with that particular intent"). Second, Mrs. Bowman testified that when appellant appeared at her door and demanded to be let in, she started banging on the wall to alert her mother to call the police. This prompted appellant to yell through the door, "Y'all better stop knocking on that goddam wall because if anybody comes out of that house [*i.e.,* the mother's house] ... then they gonna get hurt too, so y'all better stop knocking on that goddam wall." His statement that "they gonna get hurt *too* " would support an inference that appellant intended to "hurt" not only whoever might come out of the mother's house, but those inside Mrs. Bowman's house as well. This evidence, combined with the violent manner of his entry, his generally aggressive behavior both before and after he entered, and his failure to exhibit any other purpose for being in the house, together with what the *Shelton* case referred to as "other circumstances," [8] would permit a jury to find that when appellant entered Mrs. Bowman's home by force and without authority, he did so with the intent to commit an assault. *See Johnson v. United States,* 613 A.2d 888, 899–900 (D.C.1992). Indeed, the facts in this case are stronger in

some respects than those in *Johnson.* In this case, unlike *Johnson,* appellant knew that the house was occupied when he entered it. Moreover, there was evidence of threats by appellant while he was trying to enter the house through the door, evidence not present in *Johnson. See id.* at 904 (Ferren, J., dissenting). For these reasons we hold that appellant's sufficiency challenge is without merit.

### III

■ Appellant · contends that the trial court erroneously excluded certain testimony which, he claims, would have established that he went to Mrs. Bowman's house with a benign intent. The trial court rejected appellant's proffer for several reasons: first, it was not relevant; second, it did not establish his intent; and third, unless appellant himself were to testify, it was inadmissible hearsay.

■ Our review of the trial court's determination of relevance is highly deferential; we will disturb it only upon a showing of an abuse of discretion. *See, e.g., Punch v. United States,* 377 A.2d 1353, 1358 (D.C.1977), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978); *Wooten v. United States,* 285 A.2d 308 (D.C.1971). The issue at trial was not appellant's state of mind before he went to Mrs. Bowman's house, but his state of mind at the moment he hurled himself through her living room window.[9] Counsel's proffer was that a witness would testify that appellant had asked her "to advance him some money so that he could buy Pampers or take the money to his wife." The proffer was rather vague as to the date of this conversation, a fact that would support the trial court's decision to exclude it. But even

---

charge Mr. Bowman with unlawful entry. We admit that it was an unlawful entry. He had no permission to go in there. The Government piled on. They added the charge of burglary which requires an intention to commit a crime at the time that you enter.

8. These circumstances include (1) the fact that appellant knowingly violated a court order which required him to stay away from his estranged wife's home, (2) the cutting of the telephone wires, (3) his persistence in making threats once

he was inside, and (4) his flight at the sound of arriving police cars.

9. For example, in his closing argument defense counsel said:

And Mr. Bowman had no right to go through that window. But whether he had the right to go through that window or not, *that's not the issue that you've got to decide here. The issue is, did he intend to commit the crime of assault,* as the Government has charged? [Emphasis added.]

assuming that it took place on the very date of the offense, and assuming further that it was some evidence of appellant's state of mind at the time he made the statement (in which case it would not be excludable as hearsay, *see* FED.R.EVID. 803(3)), the proffer could not establish his state of mind when he broke into the home of his estranged wife— by kicking in the window—several hours later. *See Jackson v. Young*, 546 A.2d 1009, 1011 (D.C.1988). Moreover, the alleged conversation had minimal probative value when weighed against the direct evidence of the manner of his entry and his conduct inside Mrs. Bowman's living room. In these circumstances we find no abuse of discretion in the trial court's refusal to admit the proffered testimony.

### IV

■ Appellant argues that the trial court's refusal to give a special unanimity instruction violated his Sixth Amendment right to a trial by jury. At trial defense counsel asked for an instruction that the jury must unanimously find that appellant intended to assault a particular person. Counsel sought to foreclose the possibility that appellant might be convicted of first-degree burglary if, for example, six jurors found that he intended to assault Mrs. Bowman and the other six found that he intended to assault Officer Cosey. The government's position, with which the trial court agreed, was that the jurors need only be unanimous in finding that appellant had the intent to assault *someone*—anyone— when he broke into Mrs. Bowman's house.

Appellant maintains that, because he presented different defenses to the same charge, he had a right to a unanimity instruction under *Scarborough v. United States*, 522 A.2d 869 (D.C.1987) (en banc). In *Scarborough* the trial court gave only a general unanimity instruction in a trial for receiving

stolen property. We reversed the conviction, holding that the court should have given a special unanimity instruction to ensure that the jury agreed on which stolen items the defendant had feloniously received. *Id.* at 871.[10]

Appellant asserts that, like the defendant in *Scarborough*, he presented "conceptually and factually separate defenses" to the charge of burglary with intent to commit an assault. As to Mrs. Bowman, he says, there was no evidence that he intended to assault her or that she was in fact assaulted; as to Officer Cosey, he argues that he could not have intended to assault Cosey when he unlawfully entered the house because he did not even know that Cosey was in the house at all. Thus his defenses were different with respect to the two alleged victims, and under *Scarborough*, he contends, he was entitled to a special instruction.

■ Appellant's argument fails for at least two reasons. First, because burglary consists only of an entry with intent to commit another offense, it is irrelevant that appellant did not actually carry out that intent by assaulting Mrs. Bowman once he was inside her house. *See Strickland v. United States*, 332 A.2d 746, 748 (D.C.) (first-degree burglary is "an offense against habitation [and] is completed when an individual enters an occupied dwelling with an intent to commit a criminal offense"), *cert. denied*, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975); *Lee v. United States, supra*, 37 App.D.C. at 445 (1911) ("[t]he actual commission of the additional offense is not necessary to complete the crime of [burglary]"). We note, in any event, that appellant was not charged with assault, and thus the jury never had occasion to find that he assaulted any particular person. Moreover, the elements of bur-

10. The stolen property in *Scarborough* was taken from an automobile body shop. When the owner of the shop went to visit the defendant shortly after discovering the theft, he saw three spray guns in the defendant's possession which he recognized as his own. A few days later the police found a grinder, also one of the stolen items, at a garage where the defendant sometimes worked. The defendant claimed that he had purchased the spray guns in good faith from a man in the neighborhood, and that he had received the grinder as a gift from his girl friend three years earlier. Because these claims constituted separate defenses, we held that the defendant was entitled to an instruction that the jury must be unanimous as to which stolen items the defendant had received before it could find him guilty of receiving stolen property.

glary [11] do not include the identity of the victim of the crime which the burglar intends to commit after entering the burglarized premises, and we have found no case holding that *that* victim's identity must be proved, or even alleged. The reason for this is obvious: the crime of burglary is complete at the moment of entry, and the victim of the burglary is the owner or lessee of the premises, not whoever happens to be there at the time (who may or may not be the owner).[12] The intended additional offense is often committed soon thereafter, but even if it is not, the already-completed burglary is not vitiated or affected in any way by its omission.

▮ Furthermore, there could not have been two legally separate incidents, as appellant argues, because even if appellant had assaulted several people inside Mrs. Bowman's house, he could have been convicted of only one burglary. *See Warrick, supra,* 528 A.2d at 439 (convictions of burglary with intent to steal and burglary with intent to assault could not both stand because the societal interest protected by the burglary statute was offended only once); *cf. Parks v. United States,* 627 A.2d 1, 8 (D.C.1993) (although there are two different ways to commit an assault, "a unanimity instruction as to which type of assault appellant committed was not required ... because the alleged assault was based on a single incident"). That is why appellant was charged with only one count of burglary with intent to commit an assault. A burglary with intent to commit two assaults (assuming that appellant had such an intent) is still a single, unitary burglary.

We therefore hold that the trial court properly denied appellant's request for a special unanimity instruction.

**11.** *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.34 (4th ed. 1993).

**12.** This court has held that "for the purpose of determining whether there has been a constructive amendment [of the indictment], the identity of the victim is an 'essential element.'" *Joseph v. United States,* 597 A.2d 14, 17 (D.C.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1988, 118 L.Ed.2d 585 (1992) (citing *Scutchings v. United States,* 509 A.2d 634, 637–638 (D.C.1986)). But *Joseph* and *Scutchings* are of no help to appellant here because the identity of the burglary victim

V

▮ Appellant asserts that "a wealth of prosecutorial impropriety in closing argument" requires reversal here. The government points out—and appellant concedes—that most of the prosecutor's allegedly improper remarks must be reviewed for plain error because, with one exception, defense counsel did not object to them. Thus, as to the remarks that did not elicit objections, we must affirm the conviction unless the impropriety was so prejudicial as to jeopardize the very fairness and integrity of the trial. *See, e.g., Coreas v. United States,* 565 A.2d 594, 600 (D.C.1989); *Irick v. United States,* 565 A.2d 26, 32 (D.C.1989).

▮ Evaluating claims of prosecutorial impropriety in closing argument is a three-step process. "First, we must determine whether any or all of the challenged comments by the prosecutor were improper." *McGrier v. United States,* 597 A.2d 36, 41 (D.C.1991) (citations omitted). The second step requires us to consider several other factors, in order to place the impropriety in context:

> The applicable test ... in determining whether prosecutorial [impropriety] infects a verdict is to balance ... the gravity of the [impropriety], its direct relationship to the issue of innocence or guilt, and the effect of specific corrective instructions of the trial court, if any, against the weight of the evidence of appellant's guilt.

*Villacres v. United States,* 357 A.2d 423, 428 (D.C.1976) (citation omitted); *accord, e.g., Dixon v. United States,* 565 A.2d 72, 75 (D.C.1989). The third step, determining the degree of prejudice, is usually the most significant:

was clearly stated in the indictment and proved at trial. That victim was Mrs. Bowman, the lessee of the burglarized house. The fact that she and others happened to be in the house at the time of the burglary is relevant only insofar as the statute, D.C.Code § 22–1801(a), requires that *someone* be inside the house at the moment of entry in order to make the crime a first-degree, rather than second-degree, burglary. It is entirely irrelevant to the defense that appellant presented.

If we find that a particular comment was improper, and if the issue was properly preserved for appellate review, we will nevertheless affirm the conviction unless the defendant suffered "substantial prejudice" as a result.

*McGrier, supra,* 597 A.2d at 41 (citation omitted); *see Gaither v. United States,* 134 U.S.App.D.C. 154, 172, 413 F.2d 1061, 1079 (1969) (defining "substantial prejudice"). If the allegedly improper comment did not elicit any objection at trial, the third step is even more demanding:

> [W]hen the defendant has failed to object to the prosecutor's supposedly improper remarks ... the defendant cannot obtain reversal without a showing of plain error, *i.e.,* error "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." ...
> When there has been no objection at trial, reversal of a conviction based on improper prosecutorial argument is appropriate only in a "particularly egregious" case, when "a miscarriage of justice would otherwise result."

*McGrier, supra,* 597 A.2d at 41 (citations omitted).

Guided by these basic principles, we turn to appellant's specific claims of impropriety.

### A. *The exhortations to "tell" appellant something*

■■■ Two of the prosecutor's remarks during closing argument were improper because they both called upon the jury to consider what its verdict would "tell" appellant about his conduct on the night of November 23. During his initial summation, the prosecutor reviewed how appellant had mistreated his estranged wife and then asked the jury "to tell Mr. Bowman that our society won't allow that kind of behavior." This comment brought no objection from defense counsel. Later, at the end of his rebuttal argument,

the prosecutor said that "to find Mr. Bowman not guilty in this case is to tell him that he can go on doing what he did, and that's okay." Defense counsel objected to this last remark on the ground that it was "unreasonable," "misleading," and inflammatory. While this objection could have been more clearly stated, we will assume for the sake of argument that it was sufficient to raise the claim of error that appellant, through new counsel, now presents on appeal.

■■■ In our view, both of these remarks were improper. This court has stated repeatedly that an attorney must not ask a jury to "send a message" to anyone, and we now expressly hold that urging the jury to "tell" someone something is likewise improper, and for the same reason. Juries are not in the message-sending business. Their sole duty is to return a verdict based on the facts before them. Urging a jury to "send a message" is impermissible because it implies that there is a reason to find the defendant guilty other than what the evidence has shown. *See, e.g., Coreas v. United States, supra,* 565 A.2d at 604 ("[a]rgument which encourages the jury to 'send a message' has been found improper"); *Powell v. United States,* 455 A.2d 405, 410 (D.C.1982) (holding that the comment "Isn't it time that this jury, acting as the conscience of the community, stood up and sent a message to the defendant?" was "irrelevant and inappropriate"). Thus we hold that it was improper for the prosecutor to ask the jury to send a message to appellant or to "tell" him anything at all, or even to consider what an acquittal would "tell" him.[13] As the late motion picture producer Samuel Goldwyn is reported to have said when someone asked why he did not make more "message" movies, "If you want to send a message, call Western Union."

We are satisfied, nevertheless, that neither of these comments requires reversal because appellant has not shown either plain error[14]

---

**13.** It would be equally improper, of course, for defense counsel to urge the jury, through its verdict, to "tell" something to the prosecutor or the police. *Cf. Hill v. United States,* 627 A.2d 975, 980 (D.C.1993) (upholding trial court decision to give instruction limiting jury's role to a determination of guilt, without "acting as the social conscience of the community to evaluate the wisdom of the drug laws, or the arrest procedures, or anything like that").

**14.** *Irick, supra,* 565 A.2d at 32; *see Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc) (defining plain error).

as to the first or "substantial prejudice" [15] as to the second. The government's evidence was not only strong but uncontested. Appellant offered no evidence of his own; his defense was essentially that the government had failed to prove the intent required to convict him of burglary. The prosecutor's comments had no perceptible effect on that defense, nor did they enhance the government's case in any way that we can detect. On the record before us, we discern no plain error in the trial court's failure to intervene *sua sponte* and correct the prosecutor's first lapse, and no substantial prejudice in the court's overruling of counsel's objection after the prosecutor's rebuttal. *See McGrier, supra*, 597 A.2d at 40; *Irick, supra*, 565 A.2d at 33. "The evidence of appellant's guilt was strong, and we are satisfied that the prosecutor's improper argument did not impermissibly sway the jury toward a guilty verdict." *Morrison v. United States*, 547 A.2d 996, 1000 (D.C.1988) (citations omitted).

### B. *Other alleged improprieties*

Appellant claims that several other comments by the prosecutor, to which no objection was made below, were improper. One such claim is that the prosecutor crossed the line in referring to certain concessions and admissions that defense counsel had made in his opening statement. The prosecutor said:

> Now, in his opening statement, Mr. Koppelman [defense counsel] told you that there were certain things that you would hear from those witnesses that the defense wouldn't argue with, that they wouldn't challenge. They are not going to contest that....
>
> Let's start with what's not disputed. Mr. Koppelman in his opening statement admits that Mr. Bowman went over to Mrs. Bowman's house that night. Not

only did he go over to her house, but he went over to her house in direct violation of a civil protection order....

These and similar statements, appellant maintains, were improper because they violated the principle that statements of counsel are not evidence, because they constituted impermissible references to appellant's failure to testify, and because they put words in appellant's mouth. We find no plain error in these remarks.

With respect to appellant's assertion that the prosecutor impermissibly commented on his exercise of his right not to testify, reversal is warranted only if the challenged remarks were manifestly intended as comments on his failure to testify, or if they were of such a nature that the jury "naturally and necessarily" would take them as such. *Byrd v. United States*, 364 A.2d 1215, 1218 (D.C.1976); *accord, e.g., Peoples v. United States*, 640 A.2d 1047, 1057 (D.C.1994). The prosecutor's remarks here do not meet this standard. He was not commenting in any way on *appellant's* decision not to testify, but instead was addressing *counsel's* announced strategy of defending against the burglary charge by conceding the issue of unlawful entry and arguing that the government could not meet its burden of proving specific intent. *See Tillman v. United States*, 487 A.2d 1152, 1154 (D.C.1985); *Watts v. United States*, 449 A.2d 308, 312–313 (D.C.1982).

Finally, citing *Hawthorne v. United States*, 476 A.2d 164 (D.C.1984), appellant argues that the prosecutor's comments improperly put words in his mouth.[16] We cannot agree. The prosecutor's argument here was vastly different from that in *Hawthorne*, a murder case in which most of the prosecutor's summation was delivered "in the first-person voice of the deceased" and "not only included non-evidence but irrelevancies designed to

15. *Williams v. United States*, 483 A.2d 292, 297 (D.C.1984), *cert. denied*, 474 U.S. 906, 106 S.Ct. 275, 88 L.Ed.2d 236 (1985), cited in *McGrier, supra*, 597 A.2d at 41.

16. Appellant cites two passages from the prosecutor's closing argument. The first was as follows:

> It's not disputed that he hurled himself through [Mrs. Bowman's] front window when she kept her door locked and wouldn't let him

> in. Ladies and gentlemen, Mr. Bowman doesn't dispute that. He admits that that's exactly what happened.

Some time later the prosecutor said:

> And in this case, it would be reasonable for you to infer that, given all of the other circumstances of what Mr. Bowman admits he did that night, that he cut those telephone wires too.... Now those are the things that Mr. Bowman admits.

inflame the emotions of the jury." *Id.* at 170, 171. In this case, unlike *Hawthorne,* the prosecutor did not put words in anyone's mouth, nor did he attempt to tell the jury what appellant would have said on the stand if he had testified. *Hawthorne* is far removed from this case and offers no basis for reversal. *See Brewer v. United States,* 559 A.2d 317, 323 n. 12 (D.C.1989), *cert. denied,* 493 U.S. 1092, 110 S.Ct. 1163, 107 L.Ed.2d 1066 (1990) ("*Hawthorne* was an extreme case").

■ Appellant also asserts that the prosecutor's rebuttal argument was "intentionally inflammatory," ending in a "crescendo" which "implored [the jury] to pass moral, not legal, judgment upon the defendant...." In particular, he complains about the prosecutor's statement that Mrs. Bowman was "in her home in a state of terror" when her ex-husband broke in, and about suggestions that Mrs. Bowman suffered not only physical damage to her home but emotional injury as well:

> Can you imagine somebody terrorizing you like that? And there may not be a lot of physical damage, but what about the mental damage? How do you sleep at night? How do you cope with something like that?

Defense counsel did not object to the language about "mental damage," however, and we find no plain error. The vivid testimony about appellant's violent entry into the house provided sufficient basis for a reasonable inference that Mrs. Bowman was "terroriz[ed]" and may have suffered at least some transitory "mental damage." While there was nothing in the evidence about her ability to "sleep at night" after appellant's intrusion, we are not persuaded that this language requires reversal when defense counsel saw no reason to complain about it at trial.

In any event, these comments can be justified, to some extent, under the "invited response" doctrine. *See United States v. Young,* 470 U.S. 1, 11–14, 105 S.Ct. 1038, 1044–46, 84 L.Ed.2d 1 (1985). Defense coun-

sel, in his summation, had asked the rhetorical question, "What damage did he do to [Mrs. Bowman]?", suggesting that her only actual injury was in being pushed aside as appellant "went toward Officer Cosey." We think the prosecutor could permissibly infer, and suggest to the jury, that she suffered a greater injury than merely being pushed aside.

For all of these reasons, we find no basis for reversal in the prosecutor's closing argument.

## VI

■ Appellant argues that the trial judge erred in denying his § 23–110 motion on the ground that he had failed to show that his trial counsel had rendered ineffective assistance. The now-familiar test for determining ineffective assistance of counsel is in two parts: there must be (1) deficient performance by defense counsel that (2) produced "errors ... so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see, e.g., Joseph v. United States, supra* note 12, 597 A.2d at 22. Our standard of review is a deferential one: "[t]he finding of ineffective assistance of counsel is a mixed question of law and fact ... and upon review, we will not reverse the trial court's findings of fact if they are supported by evidence in the record." *Curry v. United States,* 498 A.2d 534, 540 (D.C.1985)) (citations omitted).

In this case the trial judge, at the end of the § 23–110 hearing, made detailed oral findings of fact and conclusions of law extending over twenty-eight pages of transcript. The judge found that appellant had "failed to carry his burden of showing prejudice; namely, [he] failed to show that there was a valid defense which was in fact blotted out or which was not presented to the jury." [17] She also found that defense coun-

---

17. The judge went on to explain her ruling:
  [It is] necessary to first clarify and state what the defense strategy was at trial.... The strategy of the defense at trial—a strategy that had been agreed upon by Mr. Bowman and Mr.

  Koppelman—was to deny and contest the absolutely essential element of criminal intent....
  This defense, of course, made excellent sense in view of the fact that there was really no contest about the main outlines of what in fact

sel's alleged failure to call certain witnesses to testify was without merit because none of those witnesses "observed the incident in question" and thus "could not have provided any direct testimony about what actually occurred from the moment Mr. Bowman knocked on Mrs. Bowman's door." The judge found that defense counsel made effective objections, which "were invariably sustained," and that he "properly" filed a motion to sever, a motion to dismiss, and a motion to suppress evidence. With respect to the second prong of *Strickland,* the judge concluded that there would not have been "any different outcome if the case had been litigated differently" because the government's evidence "was extremely strong and essentially uncontested...."

We see no need to analyze the judge's findings in detail, for we are fully satisfied that they are well supported by the evidence presented at the § 23–110 hearing. Given our deferential standard of review under such cases as *Curry, supra,* and under D.C.Code § 17–305(a) (1989),[18] we find no reason to disturb the trial judge's ruling on appellant's claim of ineffective assistance.

■■■ Appellant does make one specific assertion which we address a bit more fully, but ultimately we find it meritless. He maintains that his trial counsel kept him from testifying and that he did not knowingly and voluntarily waive his right to testify. During trial, after conferring privately with appellant for about ten minutes, defense counsel told the court, "It's my understanding that my client has decided that he will not testify in this case.... However, it might be appropriate at this time for the court to just ask my client if that is his desire and intent." The trial judge agreed, and asked appellant

if he had decided not to testify. Appellant answered, "Yes, Your Honor. I have my reasons for—it's just like Mr. Koppelman stated earlier, they haven't shown any intent. I feel comfortable." But when the judge asked if he had had "enough time to consult, consider, and make a decision" about whether or not to testify, appellant replied, "I have my doubts, Your Honor. I'd rather not answer that question." Once more the judge inquired, "Have you made your decision not to testify?" Appellant said, "Yes, I have." The judge then told appellant that it was his constitutional right not to testify.

Under *Boyd v. United States,* 586 A.2d 670 (D.C.1991), the right to testify is "a personal and fundamental right [which] will be deemed waived only if there is record evidence demonstrating 'an intentional relinquishment or abandonment of a known right or privilege.'" *Id.* at 674–675 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).[19] Although the trial judge did not explicitly advise appellant that he had a right to testify, her colloquy with him was sufficient to verify that he knew of that right and waived it. This, indeed, was more than *Boyd* required; see 586 A.2d at 677 ("[w]e need not now decide whether the trial judge had a *sua sponte* duty to conduct a colloquy"). At the end of the § 23–110 hearing, the judge concluded that appellant had voluntarily and knowingly waived his rights, basing her conclusion on four facts: (1) appellant and his lawyer frequently discussed whether he should testify; (2) appellant was well acquainted with the workings of the criminal justice system; (3) defense counsel stated on several occasions that the decision about whether appellant would testify would be made after the government rested its case;

happened.... It cannot be forgotten that the Government's case was simply overwhelming....

Therefore, the strategy that Mr. Bowman and Mr. Koppelman ... developed [was] to deny that Mr. Bowman had any criminal intent by jumping through or throwing himself through that living room window.... That strategy certainly was a reasonable one and was a strategy that met professional standards in terms of giving the jury some type of argument or some type of reasonable doubt as to

whether the Government had proved its case or not.

18.  Section 17–305(a), in pertinent part, requires us to affirm a trial court order or judgment rendered without a jury (*e.g.,* a ruling on a § 23–110 motion) "unless it appears that the judgment is plainly wrong or without evidence to support it."

19.  The trial judge noted, in her ruling on appellant's § 23–110 motion, that *Boyd* was not decided until long after appellant's trial.

and (4) the judge's colloquy with appellant revealed that he had made a full and intelligent waiver. We hold that the judge's ruling was well founded in the record and that appellant's waiver of his right to testify was knowing and voluntary and fully met the requirements of *Boyd* and of *Johnson v. Zerbst.*

## VII

Because appellant has failed to demonstrate any reversible error, the judgment of conviction and the order denying his § 23–110 motion are both

*Affirmed.*

SCHWELB, Associate Judge, concurring in part and concurring in the judgment:

In my opinion, proof that Bowman told a prospective witness that he was going to bring Pampers to his wife was relevant to his later state of mind when he forced his way into the home. *See, e.g.,* E. CLEARY, MCCORMICK ON EVIDENCE § 185, at 542 (3d ed. 1984), quoted in *Street v. United States,* 602 A.2d 141, 143 (D.C.1992) (evidence is relevant if it could reasonably show that a fact is slightly more probable than it would be without the evidence). The proffered testimony should therefore have been admitted. I think we can say with fair assurance on the basis of the record as a whole, however, that the exclusion of the testimony did not prejudice Bowman. An impartial jury would necessarily have concluded that any laudable donative intent on Bowman's part had been dissipated by the time he kicked in the window and "rolled into the house" in an obviously belligerent frame of mind. Accordingly, any error was harmless.

In all other respects, I join in the opinion of the court.