Bradford WILLIAMS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 96–CF–161, 97–CO–937.

District of Columbia Court of Appeals.

Argued June 4, 1998.

Decided Jan. 28, 1999.

Mattie P. Johnson for appellant.

Vincent H. Cohen, Jr., Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Mary–Patrice Brown, Robin C. Ashton, and Carolyn K. Kolben, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and SCHWELB and FARRELL, Associate Judges.

SCHWELB, Associate Judge:

Following a trial that ended on November 21, 1995, Bradford Williams was convicted by a jury of the following offenses:

1. First degree burglary with intent to commit assault;[1]

2. First degree burglary with intent to steal;[2]

3. Assault with intent to commit rape;[3] and

4. Robbery.[4]

On January 17, 1996, Williams was sentenced to terms of imprisonment of seven to twenty-one years on each burglary count and of five to fifteen years on the assault and robbery counts. The judge ordered that all four sentences run concurrently with one another. Williams filed a timely appeal from his convictions, claiming that the judge erred in denying his motion for judgment of acquittal.

On January 17, 1997, with the assistance of new counsel, Williams filed a motion pursuant to D.C.Code § 23–110 (1996) to vacate his conviction, alleging ineffective assistance of trial counsel. On April 21, 1997, in an eleven-page written order, the trial judge denied Williams' § 23–110 motion without a hearing. Williams appealed from this order, contending that the allegations in his motion were sufficient to entitle him to a hearing. Williams' two appeals were consolidated by order of this court.

Turning first to Williams' direct appeal, we find his claims of evidentiary insufficiency

---

**1.** D.C.Code § 22–1801(a) (1996).

**2.** D.C.Code § 22–1801(a).

**3.** D.C.Code § 22–501.

**4.** D.C.Code § 22–2901.

unpersuasive.[5] With respect to Williams' appeal from the denial of his § 23–110 motion, we sustain the denial insofar as it relates to the assault and robbery, but conclude that Williams was entitled to a hearing on his motion with respect to his two burglary convictions. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## I.

### THE TRIAL

The complaining witness in this case was Christine Kyles, a widow who was seventy-four years of age at the time of the offenses. Mrs. Kyles testified that Williams was a neighbor whom she had known for about three years. She related that on December 31, 1994, as she was walking to her home from her car, Williams approached her and asked for twenty dollars. Mrs. Kyles told Williams that she did not have any money, but Williams nevertheless walked with her towards her house and told her that he was coming in. Mrs. Kyles responded: "No, you are not," and she proceeded to unlock the storm door in order to gain entrance. Mrs. Kyles testified that when she attempted to lock the door behind her, Williams pulled the door open and forced his way into the house.

Once inside, according to Mrs. Kyles, Williams again demanded money. Mrs. Kyles again refused to give him any. Williams then pushed her to the floor, and he began to molest her sexually. Mrs. Kyles testified that during the struggle, she scratched Williams on the left side of his face. Mrs. Kyles finally gave Williams twenty dollars, and Williams left, promising to return the money, but warning Mrs. Kyles not to disclose what had occurred.

Having been threatened by her assailant, Mrs. Kyles initially said nothing to anybody about her ordeal. Approximately a week after the assault, however, she told her adult daughter what had happened. On January 12, 1995, with her daughter's encouragement, Mrs. Kyles reported the crimes to Detective Robert Catlett of the Metropolitan Police Department.

Detective Catlett testified that after speaking with Mrs. Kyles, he interviewed Williams at Williams' house. Williams told Detective Catlett that he knew Mrs. Kyles and that he had done odd jobs for her in the past. Williams acknowledged that Mrs. Kyles had given him twenty dollars on the previous New Year's Eve, but claimed that she had done so willingly, that he had intended to repay her promptly, but that he had been unable to do so because he was out of work. Detective Catlett stated that he observed some partially healed scratches on Williams' face, and that Williams claimed to have received the scratches in an accident on the job at a construction site.

Williams did not take the stand in his own defense. Several defense witnesses, including Williams' wife, testified that Williams did not have any scratches on his face during early January, 1995. Pearl Hairston, a defense investigator, testified that she took a statement from Mrs. Kyles. According to Ms. Hairston, Mrs. Kyles told her that she (Mrs. Kyles) did not want homeless people in the neighborhood; it appears that Williams had previously been homeless.

The jury evidently credited Mrs. Kyles' testimony. Williams was convicted of all four charges.

## II.

### WILLIAMS' POST–TRIAL MOTION

In his post-trial § 23–110 motion, Williams made several allegations regarding what he claimed to be deficient performance on the part of his trial counsel. Most of his contentions are patently without merit, and we dispose of them summarily.[6] One of

---

5. *See, e.g., Edelen v. United States,* 560 A.2d 527, 528–29 (D.C.1989) (per curiam); *Blakeney v. United States,* 653 A.2d 365, 369–70 & n. 3 (D.C. 1995). The government's evidence, viewed in the light most favorable to the prosecution, supports every element of each of the four offenses of which Williams was convicted.

6. Williams complained, for example, that his trial attorney had failed to publish to the jury photographs of his face which allegedly indicated that his scratches were not recent. The photographs were admitted into evidence, however, and there is no basis for concluding that Williams suffered any prejudice. Williams has

Williams' claims, however, requires more detailed consideration.

In support of his motion, Williams filed an affidavit by Ms. Hairston, the defense investigator who had testified at the trial. Ms. Hairston's affidavit, which was executed in September, 1996, ten months after the trial, reads in pertinent part as follows:

4. I asked the complaining witness, Ms. Kyles, about the break-in. I asked her about the forced entry, and I asked her to explain to me what happened.

5. In response to my question as to whether Mr. Williams had broke[n] the door. The complainant stated no, that the door was already broken.

6. That the evening of the incident, Mr. Williams had helped her bring some packages from her car into the house.

7. That he brought the packages from the car through the kitchen and put them on the [dining] room table. And that it was after he put the packages on the [dining] room table that he beg[a]n to act strange.

Relying on Ms. Hairston's affidavit, Williams contended in the trial court, and continues to claim on appeal, that defense counsel's failure to impeach Mrs. Kyles with her alleged statement to Ms. Hairston significantly prejudiced his defense. Specifically, according to Williams, Mrs. Kyles' alleged admission to the defense investigator that Williams' entry into her home was consensual and that Williams came in to her house for the purpose of assisting her with her packages would have undermined Mrs. Kyles' trial testimony that Williams forced his way in and assaulted her.

## III.

### THE TRIAL JUDGE'S DECISION

In her written order denying Williams' § 23–110 motion, the trial judge wrote, in pertinent part:

This allegation by the Defendant is vague and conclusory, and thus, insufficient to warrant a hearing. First, Ms. Hairston does not specify when the conver-

sation took place. She also does not specifically attribute the alleged statement to the complainant. Paragraphs six and seven of Ms. Hairston's affidavit state "[t]hat the evening of the incident, Mr. Williams had helped her [the complainant] bring some packages from her car into the house. That he brought the packages from the car through the kitchen and put them on the dining room table. And that it was after he put the packages on the dining room table that he began to act strange." These two paragraphs, unlike the other paragraphs in the affidavit (i.e., paragraphs three, four, eight, nine), do not specifically ascribe this statement to the complainant. The Court notes that Ms. Hairston, who testified at trial, said that she spoke with the complainant on September 9 [presumably 1995] and had "problems understanding her because of the length of time that she reported the incident." Second, assuming the statement was made by the complainant and Ms. Hairston correctly understood it, Ms. Hairston does not state that she ever communicated the statement to defense counsel. Indeed, in paragraph nine of his Affidavit, trial counsel says "the only person to tell me that he had helped her in her house with packages was the defendant."

Even if the complainant made the alleged pretrial statement and Ms. Hairston communicated it to trial counsel, the Defendant is unable to demonstrate that he was prejudiced by the trial counsel's failure to impeach the Defendant's testimony. The jury had already heard from Detective Catlett that the Defendant contended the complainant invited the Defendant into her home and that, once in her home, he asked her for money. Thus, although the jury knew the Defendant was asserting he had not forcibly entered the home, they still convicted him of burglary. It cannot be said that there is a reasonable probability the Defendant would have been acquitted of the burglary charges if trial counsel had confronted the complainant with her alleged inconsistent statement.

likewise failed to make any plausible showing of prejudice resulting from trial counsel's alleged

failure to impeach Mrs. Kyles on essentially collateral matters.

## IV.

## LEGAL DISCUSSION

### A. *General principles.*

██ In order to prevail on a claim of ineffective assistance of counsel, Williams must show both deficient performance and prejudice. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Ready v. United States,* 620 A.2d 233, 234 (D.C.1993). More specifically, he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result [of the trial] would have been different." *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. 2052; *Ready, supra,* 620 A.2d at 234. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland, supra,* 466 U.S. at 700, 104 S.Ct. 2052.

██ In the present case, Williams' claim that his counsel was constitutionally deficient arises in the context of a post-trial motion pursuant to § 23–110. This statute provides that the court must hold a hearing on such a motion unless "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." D.C.Code § 23–110(c). The use of the adverb "conclusively" reflects a stringent standard, and a hearing is presumptively required. *Sykes v. United States,* 585 A.2d 1335, 1339 (D.C. 1991).

██ No hearing is necessary, however, where there is no allegation of attorney omissions outside the record, so that the record of the trial provides an adequate basis for disposing of the motion. *Webster v. United States,* 623 A.2d 1198, 1207 (D.C.1993). We have also held that a § 23–110 motion may properly be denied without a hearing where the defendant's allegations (1) are vague or conclusory, (2) are palpably incredible, or (3)

would not merit relief even if true. *Ready, supra,* 620 A.2d at 234 (citation omitted).

In denying Williams' motion without a hearing, the judge relied on the first and (implicitly) the third of the enumerated exceptions .[7] We consider each in turn.

### B. *"Vague and conclusory" allegations.*

██ We are unable to agree with the trial judge's view that the allegations in Williams' motion were too vague and conclusory to warrant a hearing. On the contrary, Ms. Hairston's affidavit was quite specific and categorical. If true, the allegations in that affidavit establish that Mrs. Kyles gave Ms. Hairston an account of the relevant events that differed materially from Mrs. Kyles' testimony on the witness stand.

The trial judge perceived vagueness in what she characterized as Ms. Hairston's failure to "specifically attribute" to Mrs. Kyles the statement that Williams had helped her to bring her packages into her home. A fair reading of the affidavit, see p. 458, *supra,* however, discloses that this statement cannot reasonably be attributed to anyone other than Mrs. Kyles. The affidavit is about Ms. Hairston's interview with Mrs. Kyles, and Mrs. Kyles is the subject of the preceding sentences of the affidavit. Moreover, with the exception of Williams himself, Mrs. Kyles was the only person present at the time of Williams' entry into her home, and there is nothing in the affidavit to suggest that Ms. Hairston was describing an interview with Williams. Although the syntax of the affidavit may reflect less than perfect consistency, an otherwise potentially meritorious motion ought not be denied without inquiry into its merits on the basis of defects in an affiant's sentence structure. Whether Mrs. Kyles in fact made the statement must be determined at a hearing.

██ The judge also viewed a hearing as unnecessary because Ms. Hairston failed to

---

**7.** Williams' motion was based in substantial part on matters dehors the record (*e.g.,* Ms. Hairston's allegation that Mrs. Kyles made a significant admission to her). A hearing was therefore required unless one of the three enumerated exceptions applied.

Although the judge appeared to question the reliability of some of the statements in Mrs. Hairston's affidavit (*e.g.,* on the basis of Ms. Hairston's failure to allege that she had a written record of Mrs. Kyles' statement), she (the judge) did not find that Ms. Hairston's allegations were "palpably incredible."

state explicitly in her affidavit that she had apprised Williams' attorney of Mrs. Kyles' potentially impeaching admissions. We do not agree that this perceived omission warrants the denial of a hearing. Ms. Hairston was engaged by Williams' attorney to investigate the case. It was her responsibility to report to him. We cannot assume, without her evidence on the subject, that she did not carry out this responsibility. Moreover, even if we were to assume that Ms. Hairston failed to report Mrs. Kyles' remarks to Williams' counsel, it was surely counsel's obligation to "debrief" his investigator and to ascertain from her the details of her conversation with Mrs. Kyles. Finally, a deficiency in an attorney's performance is no less in derogation of the client's right to counsel when it results from the failure of counsel's investigator to do her job. *See, e.g., Strickland, supra,* 466 U.S. at 690–91, 104 S.Ct. 2052 (describing *counsel's* duty to investigate); *cf. Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (prosecutor's obligation pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to disclose exculpatory evidence to defense applies to facts known to anyone acting on the government's behalf, including the police).

For all practical purposes, § 23–110 represents a criminal defendant's final opportunity to vindicate rights protected by the Constitution (here, the right to the effective assistance of counsel). *See, e.g., Gibson v. United States,* 388 A.2d 1214, 1216 (D.C.1978) (per curiam) ("because § 23–110 is a remedy of virtually last resort, any question whether a hearing is appropriate should be answered in the affirmative"). Where, as in this case, the defendant's allegations have potential substantive merit, perceived missteps in draftsmanship should not determine the result or deny the defendant his day in court on the merits of his claims.

C. *Allegations insufficient even if true.*

The government contends that the allegations in Williams' § 23–110 motion, even if true, were insufficient to require a hearing. We agree with this contention partly but not entirely.

Turning first to *Strickland's* deficient performance prong, we are dealing here with the alleged failure by Williams' attorney to use potentially significant impeachment material against the principal prosecution witness. If established to the satisfaction of a trier of fact, the material in question—Mrs. Kyles' alleged effective acknowledgment to Ms. Hairston that Williams' entry into Mrs. Kyles home was consensual—would have called into question an important aspect of the complainant's account.

■ In retrospectively assessing trial counsel's performance, we must presume that it satisfied constitutional requirements. *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. 2052. Nevertheless, the government has not "conclusively" shown, *see* § 23–110(c), that counsel's failure to impeach Mrs. Kyles with her allegedly inconsistent statement was consistent with professional norms, or that no hearing on the issue was required. This is a situation in which the testimony of Williams' attorney, on cross-examination as well as on "direct," would materially enhance the trial judge's ability to assess counsel's trial performance in regard to the question at hand.

■ The government also argues, and the trial judge found, that Williams failed to satisfy *Strickland's* "prejudice" prong sufficiently to warrant a hearing. We note in this regard that two of Williams' convictions were for burglary, in violation of D.C.Code § 22–1801(a). "To obtain a conviction under our burglary statute, the government must prove that the defendant *entered the premises having already formed an intent to commit a crime therein.*" *Bowman v. United States,* 652 A.2d 64, 67 (D.C.1994) (emphasis added; citation and internal quotation marks omitted). The intent to commit a criminal offense at the time of entry is an element of the crime of burglary. *McKinnon v. United States,* 644 A.2d 438, 441 (D.C.), *cert. denied,* 513 U.S. 1005, 115 S.Ct. 523, 130 L.Ed.2d 428 (1994).

■ To be sure, the defendant's intent may be proved circumstantially. "[T]he fact that appellant actually committed an assault very soon after he was inside the house is strong circumstantial evidence that he in-

tended to commit an assault at the time he entered." *Bowman, supra,* 652 A.2d at 68 (citation omitted). "[P]roof of [a larceny inside the house is] the best evidence that [the defendant's] unlawful entry of the house was with that particular intent." *Lee v. United States,* 37 App. D.C. 442, 446 (1911); *Bowman, supra,* 652 A.2d at 68 (quoting *Lee* ). But the context of the courts' analysis, both in *Lee* and in *Bowman,* was an *unlawful* entry. The inference that a defendant who committed an assault or theft intended to do so at the time of an *invited* entry, while undoubtedly a permissible one, is obviously significantly weaker than the inference that may reasonably be drawn when the defendant entered the home against the will of the complainant. An admission by Mrs. Kyles that Williams entered her home with her consent would thus have materially affected the strength of the burglary case against the defendant. As to the burglary counts, we cannot say that lack of prejudice has been conclusively established on the present record, or that a hearing on the issue was unnecessary.[8]

▮▮▮ Ms. Hairston did not allege in her affidavit, however, that Mrs. Kyles said anything to her which would have exonerated Williams of the crimes that he committed inside her home, namely, robbery and assault with intent to commit rape. Her account of those offenses was consistent and essentially uncontradicted. She also reported the assault and robbery to her daughter a week or so after the fact. Although the impeachment of Mrs. Kyles with an inconsistent statement as to the circumstances of Williams' entry might perhaps have affected to some degree the jury's assessment of this elderly witness' ability to recollect and her general credibility, we perceive no reasonable probability, *Strickland, supra,* that this would have affected the jury's verdict on the assault and robbery counts. Even if Mrs. Kyles had

acknowledged on the witness stand that Williams helped her with her packages, and that he began to "act strange" and assault her only after he had set the packages down, it is difficult to conceive that the jury would have considered her account of the assault and robbery to be a fabrication. Of course, almost anything is possible, but the remote possibility that the jury would have discredited Mrs. Kyles' essentially uncontradicted testimony as to what occurred inside her home does not establish prejudice in the *Strickland* sense.

## V.

## CONCLUSION

For the foregoing reasons, we affirm Williams' convictions for assault with intent to commit rape and for robbery, and we sustain, as to these two convictions the denial without a hearing of Williams' § 23–110 motion. As to Williams' two burglary convictions, we remand the case for further proceedings consistent with this opinion.

*So ordered.*[9]

WAGNER, Chief Judge, concurring in part and dissenting in part:

I join in the opinion of the Court with one exception. An admission by the complaining witness that she invited appellant into her home would have affected materially not only the burglary count, but the other criminal charges as well. Such a discrepancy is a significant factor which the jury might properly consider in determining whether to believe other portions of the complainant's account of the events, including those which formed the basis for the other criminal charges. *See generally* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA,

---

8. The trial judge took the position that because Detective Catlett had revealed Williams' claim that Mrs. Kyles had invited him into her home, Williams was not prejudiced by trial counsel's failure to impeach Mrs. Kyles. In our view, however, the *complainant's* acknowledgment that this is what occurred had far greater exculpatory potential than the defendant's assertion to

a police detective, which the jury might well view as self-serving and unworthy of belief.

9. We note again that all of the sentences imposed by the trial judge were to run concurrently. Should the government move to dismiss the burglary counts, a hearing on the § 23–110 motion would be unnecessary.

No. 2.11 (4th ed.1993);[1] *see also Bragdon v. United States,* 668 A.2d 403, 406 (D.C.1995) (citations omitted) ("In weighing the evidence, the jury [is] free to credit some portions of the victim's testimony while discrediting others."); *Kinard v. United States,* 416 A.2d 1232, 1235 (D.C.1980). Therefore, I would remand for further proceedings on all counts, instead of just the burglary count.

---

1. Instruction No. 2.11 states for example:
   In reaching a conclusion as to the credibility of any witness, you may consider any matter that may have a bearing on the subject. You may consider ... the witness's *manner of testifying;* whether the witness impresses you as a truthful person ...
   \* \* \* \* \* \*
   ... You may consider whether the witness has been contradicted or corroborated by other credible evidence.